1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA

UNITED STATES OF AMERICA,　)
　　　　　　　　　　　　　　)
　　　Plaintiff,　　　　　　)
　　　　　　　　　　　　　　)　　No. 16-mj-0039
vs.　　　　　　　　　　　　)
　　　　　　　　　　　　　　)　**REDACTED TRANSCRIPT**
LANDON NATHANSON LOVE,　　 )
　　　　　　　　　　　　　　)
　　　Defendant.　　　　　　)


APPEARANCES:


TIMOTHY VAVRICEK, ESQ., Assistant United States
Attorney, United States Attorney's Office,
111 Seventh Avenue SE, Cedar Rapids, Iowa 52401, on
behalf of the Plaintiff.

HEATHER QUICK, ESQ., Assistant Federal Public
Defender, Federal Public Defender's Office,
320 Third Street SE, Suite 200, Cedar Rapids,
Iowa 52401-1542, on behalf of the Defendant.


PRELIMINARY/DETENTION HEARING HELD BEFORE
THE HONORABLE JON STUART SCOLES,

taken at the Federal Courthouse, 111 Seventh Avenue SE,
Cedar Rapids, Iowa, on the 19th day of February, 2016,
commencing at 2:28 p.m., reported by Kay C. Carr,
Certified Shorthand Reporter in and for the State of
Iowa.


Kay C. Carr
Certified Shorthand Reporter
Registered Professional Reporter
Cedar Rapids, Iowa
(319) 362-1543

Contact ARS at www.ar-reporting.com
to purchase a complete copy of the transcript.

2

I N D E X

| WITNESS | DIRECT | CROSS | REDIRECT | RECROSS |
|---|---|---|---|---|
| GOVERNMENT'S: | | | | |
| Jacqulyn Kelly | 4 | 18 | 20 | |
| Timothy Hunt | 23 | 44 | 48 | |

E X H I B I T S

| EXHIBITS | OFFERED | RECEIVED |
|---|---|---|
| GOVERNMENT'S: | | |
| 1 - Facebook messages | 39 | 39 |
| 2 - Facebook post | 41 | 41 |
| 3 - Facebook post and comments (not offered or received) | | |
| 4 - Timeline | 33 | 33 |
| 5 - Transcript of grand jury proceedings | 51 | 51 |

to purchase a complete copy of the transcript.

**3**

1    THE COURT:  The matter now before the Court
2  is the case entitled United States of America versus
3  Landon Nathanson Love, No. 16-mj-0039.  This matter
4  comes on for a preliminary hearing and detention hearing
5  at this time.  The Government is represented by
6  Assistant United States Attorney Tim Vavricek.  The
7  defendant appears in court and is represented by
8  Attorney Heather Quick.
9    The purpose of the hearing today is to
10 determine whether there's probable cause to believe that
11 the defendant has committed the crime described in the
12 criminal complaint, and if so, whether he should be
13 detained pending further proceedings.
14   Are the parties prepared to proceed with the
15 hearing at this time?
16   MR. VAVRICEK:  Yes, Your Honor.
17   MS. QUICK:  Yes, Your Honor.
18   THE COURT:  Mr. Vavricek?
19   MR. VAVRICEK:  The United States calls
20 Jackie Kelly.
21   THE COURT:  Jackie Kelly?  Are you Jackie
22 Kelly?
23   MS. KELLY:  Yeah.
24   THE COURT:  Come on up.  You've been called
25 as a witness.

**4**

1    MS. KELLY:  Am I supposed to be called as a
2  witness?
3    THE COURT:  Raise your right hand.
4    JACQULYN KELLY,
5  called as a witness, being duly sworn, was examined and
6  testified as follows:
7    THE COURT:  Have a seat right there.  Scooch
8  way up and then pull the microphone down toward you.
9  You need to get within about two inches of it in order
10 to make it work.
11   THE WITNESS:  Okay.
12   DIRECT EXAMINATION
13 BY MR. VAVRICEK:
14 Q.   Please state your name.
15 A.   Jacqulyn Kelly.
16 Q.   Would you, for the record, please spell your
17 first name and your last name.
18 A.   J-A-C-Q-U-L-Y-N, K-E-L-L-Y.
19 Q.   And what is your city of residence?
20 A.   Dubuque, Iowa.
21 Q.   And where do you live exactly?
22 A.   XXXXXXXXXXXXXXXXXXXXXXXXXXXXX, Dubuque,
23 Iowa 52001.
24 Q.   Do you know the defendant, Landon Love?
25 A.   Yes.

**5**

1  Q.   How so?
2  A.   He's the father of my child.
3  Q.   Are you in a romantic relationship with him?
4  A.   Yes.
5  Q.   Do -- does he live with you?
6  A.   Yes.
7  Q.   Does he currently have lawful employment?
8  A.   I know he's applied for unemployment.  It's in
9  the process.
10 Q.   My -- my question is does he currently have
11 lawful employment?
12 A.   What -- can you, like, specify, like, is he
13 getting an income off the debit card?
14 Q.   Does he have a job?
15 A.   No.
16 Q.   Has he had a job in the last two months?
17 A.   December 6th was the day he lost his job.
18 Q.   Where was he working?
19 A.   The FloorShow.
20 Q.   Is that also in Dubuque?
21 A.   Yes.
22 Q.   Why did he lose his job?
23 A.   As far as I know when --
24   THE COURT:  I'm sorry.
25   THE WITNESS:  What?

**6**

1    THE COURT:  I didn't hear you.
2  A.   Oh, he lost his job for -- I mean I guess I don't
3  know the exact reasoning.  He was termi -- I mean they
4  left him a voicemail and said that the relationship
5  wasn't going to work any longer.
6  Q.   All right.  Ma'am, how long have you known the
7  defendant?
8  A.   Since I was eight -- six years.  Since I was 18.
9  Q.   And how old are you now?
10 A.   I'm 23.
11 Q.   And how old is your child?
12 A.   Sixteen months.
13 Q.   Why was the defendant terminated from his job at
14 the FloorShow?
15 A.   I -- I mean I don't know.  He got into an
16 argument with one of the guys and then after the work,
17 he got a voicemail saying that the job -- the
18 relationship with the coworkers weren't gonna work
19 anymore.
20 Q.   How long had he worked at the FloorShow?
21 A.   Quite a few months.  March maybe.  March to
22 December.
23 Q.   So approximately nine months?
24 A.   I would say, yeah.
25 Q.   How many hours a week did he work there?

to purchase a complete copy of the transcript.

## 7

1  A.   Forty.

2  Q.   What did he do before that?

3  A.   He worked at Dubuque Auto Plaza.

4  Q.   And why did he leave Dubuque Auto Plaza?

5  A.   Because the position they guaranteed him when

6  they hired him, he never made it to that position.

7  Q.   So did he voluntarily quit?

8  A.   Yes.

9  Q.   Ma'am, have you seen the defendant sell

10  marijuana?

11  A.   No.

12  Q.   Have you seen him sell any illegal substances?

13  A.   No.

14  Q.   Is he a drug dealer?

15  A.   No.

16  Q.   Have you seen him use marijuana?

17  A.   Yes.

18  Q.   How often does he use marijuana?

19  A.   Mostly only the weekends.

20  Q.   Where does he get his marijuana?

21  A.   I have no clue.  I don't have -- I'm not in that.

22  Q.   Does he associate with other persons that use

23  marijuana?

24  A.   Yes.

25  Q.   Who are the names of the people that he

## 8

1  associates with that use marijuana?

2  A.   I mean his friends.  I mean --

3  Q.   What are their names?

4  A.   Will.  I mean I don't know.  He's got a handful

5  of friends.  We don't have the same friends.

6  Q.   Ma'am, you just testified that he associates with

7  people who use marijuana.

8  A.   Right.

9  Q.   Do you know their names?

10  A.   I mean I know most of the people he talks to.

11  Q.   Would you please state some of the names.

12  A.   Will, Cam.  Those are the two main --

13  Q.   What's Will's last name?

14  A.   Wesley.

15  Q.   What is Cam's last name?

16  A.   Pete.

17  Q.   Who else?

18  A.   Those are the two main guy friends.  Duke Watson.

19  Q.   Who else?

20  A.   Like -- like all of his closest friends or like

21  what?

22  Q.   Anyone he associates with that uses marijuana.

23  A.   I mean Duke is like his best friend and Will.  I

24  mean I don't know --

25  Q.   Anyone else?

## 9

1  A.   No.

2  Q.   Any women?

3  A.   I have no idea what women he talks to.

4  Q.   What about Kendan Fonville?

5  A.   Who?

6  Q.   Kendan Fonville.

7  A.   I don't know who that is.

8  Q.   Do you work?

9  A.   Yes.

10  Q.   And where do you work?

11  A.   Cottingham & Butler.

12  Q.   And how many hours a day do you work?

13  A.   Forty.  Or how many -- sorry; 40 hours a week;

14  eight hours a day.  Nine hours; I get a hour lunch

15  break.

16  Q.   Ma'am, I would like to draw your attention to the

17  events of earlier this week.  Was Mr. Love arrested on a

18  federal firearms charge earlier this week?

19  A.   Was he charged -- I don't know what the exact

20  charges are.

21  Q.   You know it was a federal charge though; correct?

22  A.   After the fact, yes.

23  Q.   Okay.  So how did you find out that the defendant

24  was arrested?

25  A.   They called me.

## 10

1  Q.   Who called you?

2  A.   I don't know his name.  The police department.

3  Q.   The police department called you?

4  A.   Uh-huh.

5  Q.   Was that Tuesday night?

6  A.   Yes.

7  Q.   And where were you when you received the phone

8  call?

9  A.   At home.

10  Q.   And who was with you at home?

11  A.   My daughter.

12  Q.   Anyone else?

13  A.   No.

14       THE WITNESS:  Can I ask a question, Judge.

15  Am I --

16       THE COURT:  Yes.

17       THE WITNESS:  Am I supposed to be a legal

18  witness without -- I thought I was just coming here

19  to hear the --

20       THE COURT:  You can be called as a witness

21  if either side cares to do that.  You're not required to

22  incriminate yourself, so if they ask any questions which

23  you believe would be incriminating, you have a right not

24  to answer, but if it's not incriminating you in some

25  sort of crime, then you're required to answer.

to purchase a complete copy of the transcript.

---

**11**

1 THE WITNESS: Okay. Without a lawyer and
2 stuff even though I have a lawyer regarding --
3 THE COURT: You're entitled to a lawyer. If
4 -- if you wanted to hire a lawyer, you can.
5 THE WITNESS: Okay.
6 THE COURT: At this point, as far as I know,
7 you're not a target of any investigation so you're not
8 entitled to court-appointed counsel.
9 THE WITNESS: I just don't know how any of
10 this works is all.
11 THE COURT: Yeah. I know it's probably a
12 little surprising to you to show up and next thing you
13 know --
14 THE WITNESS: Yeah.
15 THE COURT: -- you're called up to the front
16 to talk, but, Mr. Vavricek, is this witness a target of
17 any investigation?
18 MR. VAVRICEK: Not at the present time. I
19 think it would be fair to say that she is a subject and
20 I will attempt to be very careful about the question
21 that I ask about the incident; however, she does have a
22 right to a lawyer and my understanding is that she may
23 have talked to a lawyer in state -- in the state court,
24 but I don't know the scope of the representation.
25 THE WITNESS: The --

---

**12**

1 THE COURT: Well, again, I -- Ms. Kelly, I
2 don't know what the background on this thing is. As a
3 general proposition, anyone can be called as a witness
4 in a case to testify as to what they know.
5 THE WITNESS: Okay.
6 THE COURT: However, no one is required to
7 testify against themselves or to incriminate themselves.
8 THE WITNESS: Okay.
9 THE COURT: So, you know -- and if you're
10 uncertain whether or not your answers would be
11 incriminating, then you're entitled to have an attorney
12 -- or consult with an attorney to find out.
13 THE WITNESS: Okay.
14 THE COURT: So, you know, basic questions
15 about where you live and where you work and so forth, I
16 suspect that those are probably not incriminating --
17 THE WITNESS: Right.
18 THE COURT: -- but if you're asked a
19 question about certain events and you think that those
20 somehow may be incriminating or you're uncertain as to
21 whether or not you should be answering those questions,
22 then you are -- I would not force you to answer --
23 THE WITNESS: Okay.
24 THE COURT: -- without giving you an
25 opportunity to talk to a lawyer.

---

**13**

1 THE WITNESS: Okay.
2 THE COURT: So I guess we can proceed with
3 the questions, and -- and again, Ms. Kelly, if you think
4 that you're not sure if you want to answer that
5 question, you let me know.
6 THE WITNESS: Okay.
7 Q. The day before Mr. Love was arrested, did he
8 purchase a firearm?
9 A. I did not know about no firearm purchase the day
10 before, no.
11 Q. Have you seen the defendant with a firearm during
12 the time you've known him?
13 A. Yes.
14 Q. When did you first see him with a firearm?
15 A. I couldn't tell you that.
16 Q. Was it before the birth of your child?
17 A. I would say no -- no. No.
18 Q. After your child was born, did the -- have you
19 seen your defendant with a firearm?
20 A. I mean like I said, I don't know the exact time.
21 Q. How many firearms have you seen the defendant
22 with?
23 A. One -- one.
24 Q. And what did it look like?
25 A. I mean a gun. I can't describe it to you.

---

**14**

1 Q. Was it a big gun?
2 A. Well, like I said, it's not something like this
3 (indicating). It would be more like this (indicating).
4 Q. More like a pistol or a handgun?
5 A. I don't know what a -- I don't know the
6 difference between the two. I just know it was more
7 like the smaller size. It's not something like this
8 (indicating).
9 Q. Okay. And would he carry it in his waistband?
10 A. Versus carrying it where else?
11 Q. My question is did he carry it in his waistband?
12 A. Yeah.
13 Q. And would he carry it while he was using
14 marijuana?
15 A. I don't know when he uses marijuana.
16 Q. Are you generally with the defendant on the
17 weekend?
18 A. If he's at the house. So I mean the majority of
19 the time, yes, but I don't --
20 Q. Do you work weekdays or weekends?
21 A. Weekdays.
22 Q. So you have weekends off?
23 A. Uh-huh.
24 Q. And he for the last two months hasn't worked;
25 correct?

www.oasisreporting.com
to purchase a complete copy of the transcript.

15

1  **A.**    December 6th.

2  **Q.**    Has the defendant purchased firearms?

3  **A.**    I've never -- I couldn't tell you whether he

4  purchased them.  Yeah, I guess.  I don't --

5  **Q.**    Has he ever told you I bought a gun today?

6  **A.**    No.

7  **Q.**    Does he tell you when he buys guns?

8  **A.**    No.

9  **Q.**    Okay.  Has he ever sold a gun?

10 **A.**    I couldn't tell you that.  I -- I don't -- I'm

11 not part of any of that.

12 **Q.**    Where does he store his firearm?

13 **A.**    I don't ever see any firearms, so I don't -- so

14 under the bed or out of XXXXXXXX reach.

15 **Q.**    He's -- just so I'm clear, he stores it under the

16 bed when he's not wearing it?

17 **A.**    Well, in the mattress so XXXXXX can't get it.

18 **Q.**    Is that your child?

19 **A.**    Yeah.

20 **Q.**    Is it loaded?

21 **A.**    I couldn't tell you that.

22 **Q.**    Where -- where does Mr. Love store his marijuana?

23 **A.**    I couldn't tell you that.  I don't associate with

24 the marijuana.

25 **Q.**    On Tuesday night after the defendant was

16

1  arrested --

2  **A.**    Uh-huh.

3  **Q.**    -- did he contact his mother and ask his mother

4  to get rid of the gun?

5  **A.**    I don't know if he contacted his mom or not.

6  **Q.**    Did he contact anyone to get rid of the gun?

7  **A.**    I have -- I don't know.

8  **Q.**    Did he keep the gun in the closet?

9  **A.**    In the closet?  On the top shelf?

10 **Q.**    I'm just asking if he kept the gun in the closet?

11 **A.**    Yeah.

12 **Q.**    On the top shelf?

13 **A.**    Well, there's only one shelf, I guess.

14 **Q.**    Is that in your bedroom?

15 **A.**    Yes.

16 **Q.**    Who took the gun out of the closet?

17 **A.**    I don't want to answer that question.  I mean I

18 don't -- I don't want to answer that question, I guess.

19 I don't --

20        THE COURT:  As I understand it, the

21 defendant doesn't want to answer.

22        MR. VAVRICEK:  As long as she's asserting

23 her privilege, that's --

24        THE COURT:  That sounds like what she's

25 doing.

17

1        MR. VAVRICEK:  Okay.

2  **Q.**    Has defendant's mother ever threatened witnesses

3  not to testify before the grand jury in this matter?

4  **A.**    Not that I'm aware of.  I wouldn't know that.

5  **Q.**    Has the defendant's father ever threatened any

6  witnesses not to testify before the grand jury?

7  **A.**    I wouldn't know that either.

8  **Q.**    Does the defendant have a Facebook account?

9  **A.**    Yes.  I am not friends on Facebook with him.

10 **Q.**    You're not friends with your boyfriend on

11 Facebook?

12 **A.**    Nope.

13 **Q.**    Do you ever visit his page?

14 **A.**    No.  I don't -- I mean I'm -- we're blocked from

15 each other's pages.

16 **Q.**    Have you ever seen what he posts on his Facebook?

17 **A.**    I can't see his page.

18 **Q.**    He has it locked down so public -- people who

19 aren't his friends can't see it?

20 **A.**    No.  I mean he might.  I don't know.  I don't --

21 I'm blocked.

22        MR. VAVRICEK:  No further questions,

23 Your Honor.

24        THE COURT:  Ms. Quick, do you have any

25 questions of this witness?

18

1        MS. QUICK:  Yes, Your Honor.

2              CROSS-EXAMINATION

3  BY MS. QUICK:

4  **Q.**    How long have you been in a romantic relationship

5  with Mr. Love?

6  **A.**    Since I was 18, so 2012 I graduated high school.

7  **Q.**    And how long have you lived at your residence?

8  **A.**    Since the first of 2015.

9  **Q.**    Are you currently charged with any crime?

10 **A.**    No.

11 **Q.**    Are you a convicted felon?

12 **A.**    No.

13 **Q.**    And has the defendant been -- or has Mr. Love

14 been applying for jobs?

15 **A.**    Yes.  I've been helping as well.

16 **Q.**    Where has he been applying?

17 **A.**    The car dealerships.  Vendors Unlimited.  There

18 was two positions there.  There are about

19 three dealerships.  There was another company that I --

20 that there was two positions that he applied for.

21 Flexsteel.

22 **Q.**    And does your daughter live with you?

23 **A.**    Yes.

24 **Q.**    Would he be able to come back to the home if he

25 is released today?

to purchase a complete copy of the transcript.

---

**19**

1  **A.**    Yes.

2  **Q.**    Is it fair to say that your knowledge is either

3  limited or unknown when you're talking about any alleged

4  drug use --

5  **A.**    Yes.

6  **Q.**    -- by Mr. Love?

7  **A.**    Yes.

8  **Q.**    As well as any guns he may or may not have?

9  **A.**    Yes.

10  **Q.**    A lot of what the prosecutor was talking about,

11  is it fair to say you were speculating?

12  **A.**    The what?

13  **Q.**    Is it fair to say you were speculating with

14  questions on when does he use and things like that?

15  **A.**    What do you mean by speculating?

16  **Q.**    You might not know. Might be a guess.

17  **A.**    Right.

18  **Q.**    You're not certain.

19  **A.**    I mean I don't know for certain.

20  **Q.**    How would you describe your relationship with

21  Mr. Love currently?

22  **A.**    Currently good.

23        MS. QUICK: I have no further questions.

24        THE COURT: Mr. Vavricek?

25

---

**20**

1             REDIRECT EXAMINATION

2  BY MR. VAVRICEK:

3  **Q.**    Which particular dealerships did the defendant

4  apply at?

5  **A.**    Bird.

6  **Q.**    Which -- which Bird? There are multiple Birds,

7  are there not?

8  **A.**    Bird Chevrolet.

9  **Q.**    Where in Dubuque?

10  **A.**    It was on-line. Whichever one is there across

11  from Walgreens.

12  **Q.**    Where else?

13  **A.**    Well, he worked at the -- what were the other

14  ones? What are some car dealerships?

15  **Q.**    Well, you indicated you helped him apply for

16  jobs.

17  **A.**    Right. I'm just trying to think of the -- the

18  types of cars because there's Bird. There's two other

19  ones. I had them written down on a piece of paper.

20  **Q.**    You said he applied at Vendors Unlimited;

21  correct?

22  **A.**    Yes.

23  **Q.**    What's Vendors Unlimited?

24  **A.**    It's like -- well, you can get it with a

25  chauffeur's license; like a CDL license. You would

---

**21**

1  drive a truck.

2  **Q.**    Well, his license is suspended; correct?

3  **A.**    He was currently taking care of it. Paying

4  off --

5  **Q.**    How was he taking care of it?

6  **A.**    Paying off the seat belt tickets.

7  **Q.**    Does he have a CDL license?

8  **A.**    Yes.

9  **Q.**    You indicated on cross-examination that you were

10  perhaps guessing or speculating, so let's just make this

11  clear. You weren't guessing or speculating that

12  Mr. Love used marijuana on the weekends. In fact, you

13  know he uses marijuana on the weekends; correct?

14  **A.**    Right.

15  **Q.**    And he uses it in your home; right?

16  **A.**    No.

17  **Q.**    No?

18  **A.**    No.

19  **Q.**    Where does he smoke it?

20  **A.**    Wherever he -- with his friends.

21  **Q.**    And you weren't guessing or speculating that the

22  defendant carried a firearm in his waistband because

23  you've seen him carry a firearm in his waistband;

24  correct?

25  **A.**    Okay.

---

**22**

1  **Q.**    Is that a yes?

2  **A.**    Have I seen him carry a gun in his waistband?

3  **Q.**    That's my question.

4  **A.**    Yes.

5  **Q.**    And you weren't speculating about that. You know

6  that.

7  **A.**    Okay. I guess I don't know what -- I guess I

8  speculating was -- I didn't understand the word

9  speculating.

10  **Q.**    Okay. So you don't know what the word speculate

11  means; right?

12  **A.**    No.

13  **Q.**    Okay. That was a word that counsel used. It's

14  not a word you used; right?

15  **A.**    What do you mean counsel?

16  **Q.**    The attorney for Mr. Love.

17  **A.**    Okay. That's the term she used, yes.

18  **Q.**    Yes. Okay. But you weren't guessing; right?

19  **A.**    Guessing at what?

20  **Q.**    Ma'am, are you under the influence of any

21  substances that might interfere with your ability to

22  tell the truth?

23  **A.**    No.

24        MR. VAVRICEK: Okay. No further questions,

25  Your Honor.

www.oasisreporting.com
to purchase a complete copy of the transcript.

23

1    THE COURT: Anything else, Ms. Quick?
2    MS. QUICK: No, Your Honor.
3    THE COURT: You may step down.
4    THE WITNESS: Thanks.
5    (Witness excused.)
6    THE COURT: Any additional evidence,
7  Mr. Vavricek?
8    MR. VAVRICEK: Yes. Mr. Tim Hunt.
9    THE COURT: All right. Sir, if you'll step
10 right up here, please. Raise your right hand.
11             TIMOTHY HUNT,
12 called as a witness, being duly sworn, was examined and
13 testified as follows:
14    THE COURT: Have a seat.
15         DIRECT EXAMINATION
16 BY MR. VAVRICEK:
17    Q.    Sir, what is your name?
18    A.    Timothy Hunt, H-U-N-T.
19    Q.    And what is your occupation?
20    A.    I am a special agent with the Bureau of Alcohol,
21 Tobacco, Firearms and Explosives.
22    Q.    And with respect to Mr. Love, is it fair to say
23 you're not the case agent for this case, but you have
24 both through some personal experience and through
25 reading the reports of the case agent, Nicholas

24

1  Schlosser, come to know about the case?
2    A.    That would be accurate.
3    Q.    Okay. Are you familiar with an individual named
4  Landon Nathanson Love or Landon Love?
5    A.    I am.
6    Q.    How so?
7    A.    I was asked to assist Investigator Schlosser from
8  the Dubuque Police Department in an investigation he was
9  working into firearms purchased by Mr. Love.
10    Q.    Let's talk about Officer Schlosser's
11 investigation. How did Officer Schlosser first come
12 generally to know about the defendant, Mr. Love?
13    A.    In December of 2000 -- I'm sorry -- December 1,
14 2015, there was a shooting in Dubuque. Shortly
15 thereafter, on December 5th of 2015, officers in Asbury,
16 Iowa, which is just to the west of Dubuque, conducted a
17 traffic stop on a vehicle. Inside the vehicle were
18 Reginald Shaw, Camron Pete and Heather Duffy. Also in
19 the vehicle were three firearms. Initially, Reginald
20 Shaw claims ownership of all three firearms as well as
21 some controlled substances which were inside the
22 vehicle. The -- Mr. Shaw was detained pending charges
23 on that investigation.
24         In later December, Mr. Shaw reached out to
25 the police department and on December 24th,

25

1  Investigator Schlosser interviewed Mr. Shaw at
2  Mr. Shaw's request.
3    Q.    Now, the firearms that were recovered in the --
4  in the car, did you later examine those firearms?
5    A.    Yes, I did.
6    Q.    And did you also examine any ammunition
7  associated with those firearms?
8    A.    I believe I did examine the ammunition as well.
9    Q.    And did you make a determination as to whether
10 those firearms had been -- and ammunition had been
11 manufactured outside the state of Iowa?
12    A.    They would have been manufactured outside the
13 state of Iowa.
14    Q.    Okay. Now, Officer Schlosser's interview with
15 Mr. Shaw, what did Mr. Shaw want to say to Mr. --
16 Officer Schlosser?
17    A.    Mr. Shaw indicated the firearms actually belonged
18 to Camron Pete; that Mr. Shaw was going to purchase one
19 of the firearms from Mr. Pete. Additionally, that he
20 knew that Pete had purchased the firearms from Landon
21 Love; that Landon Love had instructed Pete to obliterate
22 the serial numbers on the firearms and that Mr. Love was
23 going to report those firearms as stolen. He also
24 indicated that Mr. Pete was involved in the shooting
25 that occurred on December 1st and that Shaw was also

26

1  present during that shooting.
2    Q.    Did Shaw and Pete indicate whether Ms. Duffy had
3  been there as well with her car?
4    A.    I don't recall if he specifically said that. I
5  know that Ms. Duffy indicated at one point that she was
6  present during the shooting and that she had driven them
7  to that location in her vehicle.
8    Q.    Did Officer Schlosser then go and get a series of
9  videotapes of public areas in Dubuque to corroborate
10 this story?
11    A.    He did.
12    Q.    And what did the video generally show?
13    A.    Two individuals traveling down the street.
14    Q.    And did the -- did the car generally match the
15 description of the -- car registered to Ms. Duffy?
16    A.    It did.
17    Q.    With respect to Mr. Shaw, was a firearm found
18 underneath his seat?
19    A.    Yes. There was a firearm located underneath the
20 drive's seat that Mr. Shaw was in and that was the
21 firearm that he claimed that he was in the process of
22 purchasing from Mr. Pete.
23    Q.    Was Ms. Duffy in the passenger seat of her own
24 vehicle?
25    A.    That's correct.

to purchase a complete copy of the transcript.

**27**

1 Q. And Mr. Pete -- was anything found of
2 significance other than the two firearms in the back
3 seat?

4 A. There was actually a third firearm -- there were
5 two firearms in the back seat, as well as I believe
6 suspected crack cocaine.

7 Q. And Mr. Shaw -- was a pat-down search conducted
8 on him and several small baggies of marijuana were found
9 in his pocket?

10 A. That's correct.

11 Q. In the -- in a backpack near Mr. Pete, was a
12 digital scale with marijuana residue, a Hornady 9 mm box
13 with three live rounds found with what you indicated was
14 cocaine?

15 A. Yes.

16 Q. Did Mr. Pete make any representation to law
17 enforcement about whether shoes that were found in the
18 back seat were his?

19 A. I believe he indicated they were his.

20 Q. Was one of the firearms in the back a Ruger 90
21 9 mm handgun with a loaded 30 round magazine in it?

22 A. That's correct.

23 Q. And was that handgun reported as lost?

24 A. Yes. Yes; the firearm was reported as lost.

25 Q. The loaded 30 round magazine -- is a 30 round

**28**

1 magazine an extended or an extra large capacity
2 magazine?

3 A. It would be considered a high capacity magazine,
4 yes.

5 Q. And just to physically kind of describe it, do
6 you know how long it would be?

7 A. It would protrude a fair distance underneath the
8 end -- or the butt of the pistol.

9 Q. Sir, based on your training and experience as an
10 ATF agent, why do people -- do individuals tell other
11 individuals to obliterate serial numbers from firearms?

12 A. To attempt to conceal the source of the firearms
13 and because they believe that the transaction is not
14 lawful.

15 Q. Mr. Love -- did Mr. Love at any time obtain a
16 permit to purchase weapons?

17 A. He obtained a permit to carry weapons, which
18 would allow him to purchase weapons as well in June -- I
19 believe June 3rd of 2015.

20 Q. Once you get that permit, does that give you
21 certain privileges or make it easier to purchase
22 firearms?

23 A. Yes. You need a permit of some sort to purchase
24 any handguns; either a permit to acquire or carry
25 permit. Additionally, no background check is done if

**29**

1 somebody has a valid permit to purchase or carry.

2 Q. Mr. Shaw -- does Mr. Shaw have a prior conviction
3 for misdemeanor domestic abuse?

4 A. He does.

5 Q. Did Officer Schlosser later follow up with
6 Ms. Duffy?

7 A. Yes, he did.

8 Q. And did she tell Mr. -- or Officer Schlosser
9 about anything in relation to Mr. Shaw's story about
10 Mr. Love and the firearms?

11 A. She provided a very similar story; that Mr. Shaw
12 had obtained the firearms through Mr. Pete who had
13 gotten the firearms from Mr. Love.

14 Q. Did she also make any statement as to whether
15 Pete and Shaw were regular marijuana users?

16 A. Yes. She indicated they were both regular users
17 of marijuana.

18 Q. Did Officer Schlosser then make any inquiry into
19 whether Mr. Love had, in fact, reported any guns as
20 stolen?

21 A. Yes. And I believe some of this was occurring
22 concurrently at that period of time, but yes, Mr. Love
23 had reported I believe a total of five firearms stolen;
24 one in July of 2015 and then four at a separate incident
25 in October of 2015.

**30**

1 Q. And how were the -- how did he report that the
2 guns were stolen?

3 A. Both instances he said the firearms were stolen
4 from a vehicle.

5 Q. Did he indicate that -- in the October report
6 that his girlfriend's vehicle was unlocked and the
7 handguns were stolen?

8 A. Yes, he did.

9 Q. And is that girlfriend Jackie Kelly, who just
10 testified previously?

11 A. Yes, it is.

12 Q. At any point, did Officer Schlosser research
13 whether the defendant had purchased or sold firearms?

14 A. Yes. Upon the recovery of the firearms, the
15 traces were initiated upon those firearms and through
16 the investigation of those traces, Mr. --
17 Investigator Schlosser determined that Mr. Love had
18 purchased two of the firearms that were recovered from
19 the vehicle. Specifically, I believe it was a Hi-Point
20 and a Taurus.

21 Q. Now, is there some national database that
22 Officer Schlosser can just go to, put in the serial
23 numbers and then boom, it tells him where Mr. Love may
24 have purchased firearms?

25 A. No, there is not.

to purchase a complete copy of the transcript.

31

1    **Q.**    So what does Officer -- did Officer Schlosser
2    have to do if he wanted to find out if the defendant
3    had, in fact, purchased firearms?
4    **A.**    For firearms that were already recovered, he
5    could initiate a trace, which essentially is done
6    through ATF.  And ATF contacts the initial re -- or the
7    manufacturer of the firearm with the information
8    regarding that specific firearm, including the serial
9    number and then the manufacturer provides information
10   regarding who they sold it to and that's followed down
11   the line to the first retail purchaser at a gun shop.
12          In the event that -- that the firearm was
13   resold by that first retail purchaser, the investigator
14   actually has to go out and continue the investigation on
15   their own.  Additionally, if there are specific
16   businesses that the investigator is aware of of the
17   individual purchasing firearms at, the investigator can
18   reach out to that business directly and ask for any
19   records regarding any firearm sales to an individual.
20   **Q.**    And is it your understanding that
21   Officer Schlosser in this case actually went to various
22   places that are known to sell firearms in Dubuque and
23   inquired whether Mr. Love had shown up and tried to buy
24   a gun?
25   **A.**    That's correct.

32

1    **Q.**    And what did he discover?
2    **A.**    Investigator Schlosser determined or identified
3    between May -- I'm sorry -- June of 2015 and
4    February 15th of 2016, he found eight firearms that were
5    purchased by Landon Love at a number of different
6    businesses.  One firearm was sold back to a gun shop.
7    Two were recovered on the December 5th incident with
8    Landon Love -- or I'm sorry -- December 5th incident
9    with Shaw and Pete and then one firearm was actually
10   recovered after the search warrant on February 16th.
11   **Q.**    Did Officer Schlosser discover that on June 5,
12   2015, two days after getting his gun permit, Mr. Love
13   bought a Hi-Point .380 caliber from Theisen's in Dubuque
14   for $149 and then just five days later on June 10, 2015,
15   sold the gun to a different store -- the Gun Depot --
16   for $90?
17   **A.**    That's correct.
18   **Q.**    Did Officer Schlosser prepare a -- a -- a time
19   line in anticipation of this detention hearing?
20   **A.**    Yes, he did.
21          MR. VAVRICEK:  May I approach, Your Honor?
22          THE COURT:  You may.
23          THE WITNESS:  Thank you.
24          MR. VAVRICEK:  The record should reflect
25   I've just handed the witness what's been marked as

33

1    Exhibit 4.
2    **Q.**    What is Exhibit 4?
3    **A.**    Exhibit 4 is a time line that was prepared by --
4    by Investigator Schlosser.
5    **Q.**    And to the best of your knowledge, is that true
6    and accurate with the understanding that you haven't
7    personally verified each and every item on the time
8    line?
9    **A.**    That's correct.  I am aware of at least one
10   specific typo though.
11   **Q.**    And what is the typo?
12   **A.**    In -- on the February 16, 2000 -- well, all of
13   the February dates should be 2016; not 2015.  But
14   additionally, it says .20 grams of package weight of
15   marijuana.  My understanding is that should be 20 grams
16   package weight of marijuana.
17   **Q.**    Thank you.
18          MR. VAVRICEK:  With that clarification,
19   Your Honor -- or with those clarifications, the
20   United States would move to admit Exhibit 4.
21          THE COURT:  Any objection?
22          MS. QUICK:  No, Your Honor.
23          THE COURT:  Exhibit 4 is received.
24          (Government's Exhibit 4 was offered and
25          received in evidence.)

34

1    **Q.**    Sir, what is a Bureau of Alcohol, Tobacco and
2    Firearms Form 442 -- 4473?
3    **A.**    When an individual purchases a firearm from a
4    retail business that is licensed to deal in firearms,
5    they're required to complete the over-the-counter
6    transaction record commonly referred to as ATF
7    Form 4473.
8    **Q.**    And does that form require the individual
9    purchasing the firearm to state whether that person is
10   the actual buyer?
11   **A.**    Yes, it does.
12   **Q.**    And does Form 4473 require the person to certify
13   that his answers -- his or her answers are true, correct
14   and complete and that they have read and understood the
15   notices, instructions and definitions?
16   **A.**    Yes, it does.
17   **Q.**    And do the notices, instructions and definitions
18   further state that a person is the actual transferee or
19   buyer if the person is legitimately purchasing the
20   firearm for himself or otherwise acquiring the firearm
21   for himself or legitimately purchasing the firearm as a
22   gift for a third party?
23   **A.**    Yes, it does.
24   **Q.**    Sir, at any time did -- was a search warrant
25   executed at the defendant's residence on Burden Avenue

to purchase a complete copy of the transcript.

35

1  in Dubuque, Iowa?
2  A.    Yes; on February 16th of 2016.
3  Q.    Would you please tell the Court your involvement
4  in the execution of the search warrant, if any.
5  A.    Certainly.  I was present for the entire course
6  of the search warrant.  We met prior to it.  I traveled
7  to the location; made contact with -- or began knocking
8  on the door of the residence at 9:38 p.m.; made entry
9  into the residence.  Present was Ms. Kelly, as well as
10  her minor child.  We conducted the search warrant there
11  at the -- at the apartment.  Ms. Kelly called her mother
12  to come over, which was allowed, and then after her
13  mother arrived, Ms. Kelly was using her mother's cell
14  phone to send text messages.
15        During the course of the search -- while we
16  were executing the search warrant,
17  Investigator Schlosser had previously talked to
18  Mr. Love, who had advised him that there would be a
19  firearm in the closet.
20  Q.    And let's just pause here.  He talked to
21  Mr. Love.  Had Mr. Love been -- had he at that point
22  been arrested on a federal arrest warrant?
23  A.    Yes.  He had been arrested approximately
24  two hours earlier.
25  Q.    Okay.  And was Officer Schlosser at this point in

36

1  time interviewing Mr. Love about his conduct?
2  A.    Yes.  He had been interviewing Mr. Love prior to
3  our execution of the search warrant.
4  Q.    Okay.  Please continue, sir.
5  A.    So Mr. Love indicated that there would be a
6  firearm in the closet of the bedroom.  Upon our search,
7  we found numerous documents indicating firearms
8  purchases, as well as the certification of his training
9  to obtain the permit to acquire, driver's licenses,
10  two empty gun boxes, but no firearm was located.
11        Investigator Schlosser actually went back to
12  the law enforcement center for Dubuque to speak to
13  Mr. Love to try to determine where the firearm may be.
14  Mr. Love strongly indicated that the firearm should be
15  in the closet.
16        Upon our entry into the apartment, Ms. Kelly
17  was asked if there were any weapons there or anything
18  dangerous; anything that could potentially harm the
19  investigators.  She indicated there was not.  We asked
20  specifically if she was aware of any involvement with
21  Mr. Love and firearms.  She indicated that she was not
22  when we first made entry -- or when we first contacted
23  her.
24        Later after Mr. Love indicated that the
25  firearm should definitely be in the closet, Ms. Kelly

37

1  was asked if somebody came and removed the firearm.
2  Ms. Kelly indicated that Mr. Love's mother, Tanya Love,
3  had come and taken the firearm from the apartment at
4  Ms. Kelly's request.
5  Q.    When Mr. Love was arrested, did he make any
6  statements about whether he was a marijuana user?
7  A.    Yes.  He indicated -- or he had marijuana on his
8  person.  He indicated that he was not a dealer; that he
9  was a user; that he would use about every other day.
10  Q.    Did law enforcement ever retrieve the firearm
11  that the defendant's mother had?
12  A.    Yes.  His mother originally indicated that she
13  would bring the firearm to the apartment.  She later
14  advised that she had taken the firearm to her mother's
15  address, the residence of Wanda Love.  Officers made
16  contact with Wanda Love and retrieved that firearm.
17  Q.    Sir, we talked about the Form 4473s.  Did
18  Officer Schlosser determine whether the defendant had
19  certified the Form 4473 for any of the firearms that you
20  indicated he determined that the defendant had
21  purchased?
22  A.    Yes.  As of my last contact with Mr. Schlosser,
23  he had copies of the 4473s for all the firearms
24  purchases except for from Theisen's.  My understanding
25  was he had not yet obtained the one from Theisen's.

38

1  Q.    And the defendant on those Form 4473s had, in
2  fact, certified that he was the actual purchaser of
3  those firearms; correct?
4  A.    That's correct.
5        MR. VAVRICEK:  May I approach, Your Honor?
6        THE COURT:  You may.
7        THE WITNESS:  Thank you.
8  Q.    Sir, would you please turn to --
9        MR. VAVRICEK:  The record should reflect
10  I've handed the witness what have been marked as
11  Exhibits 1, 2 and 3.
12  Q.    Sir, let's talk about Exhibit 1.  Do you
13  recognize Exhibit 1?
14  A.    Yes, I do.
15  Q.    What is Exhibit 1?
16  A.    Exhibit 1 would be Facebook messages sent -- or
17  exchanged between Landon Love and Heather Duffy on I
18  believe it was February 9th of 2016.
19  Q.    Sir, is there anything significant about the date
20  February 9, 2016, with respect to Ms. Duffy?
21  A.    Yes.  Ms. Duffy testified in grand jury that day
22  regarding Mr. Love.
23  Q.    And would this exhibit then have been the
24  underlying depiction created that evening of the same
25  day?

www.DepoDelivery.com
to purchase a complete copy of the transcript.

**39**

1  **A.**    This conversation took place later that evening,
2  yes; the same day.
3      MR. VAVRICEK:  The United States moves to
4  admit Government Exhibit 1.
5      THE COURT:  Any objection?
6      MS. QUICK:  No, Your Honor.
7      THE COURT:  Exhibit 1 is received.
8      (Government's Exhibit 1 was offered and
9        received in evidence.)
10  **Q.**    And how did Officer Schlosser find out about
11  this?
12  **A.**    Ms. Duffy brought it to Mr. Schlosser's
13  attention.
14  **Q.**    Okay.  And would you please read the gray
15  portions of Exhibit 1 into the record.
16  **A.**    Certainly.  Keep my name out yo mouth.  Like I
17  said, Heather; keep my name out yo mouth.  I ain't got
18  shit else to say.  Just keep my name out yo mouth period
19  all I ask.
20  **Q.**    Government Exhibit 2; what is Government
21  Exhibit 2?
22  **A.**    Government Exhibit 2 is a Facebook post by Damien
23  Love, the father of Landon Love.
24  **Q.**    And what date does this purport to come from?
25  **A.**    February 14th.

**40**

1  **Q.**    And do you know how Officer Schlosser found this?
2  **A.**    I don't know if he was just looking on the page
3  -- I believe that he actually was contacted by one of
4  the witnesses who indicated that -- that there were
5  threatening posts on Facebook.
6  **Q.**    Was Officer -- around the time of the grand jury
7  testimony, was another grand jury witness contact
8  Officer Schlosser about contact from the defendant?
9  **A.**    Yes.
10  **Q.**    And what was the nature of that contact?
11  **A.**    She indicated that Mr. Love was calling and
12  asking questions about what had happened -- about what
13  -- about her testimony.
14      THE COURT:  Mr. Love being Damien Love or
15  Landon Love?
16      THE WITNESS:  I apologize; Landon Love.
17  **Q.**    Do you know Damien Love's relationship with the
18  defendant?
19  **A.**    Damien Love is Landon's father.
20  **Q.**    And February 14th, is that -- what is that in
21  relationship to the defendant's arrest?
22  **A.**    The defendant's arrest was two days after that.
23  **Q.**    Okay.  Now, the day before the defendant's arrest
24  and a day after Exhibit 2, did the defendant do anything
25  with respect to a firearm in Dubuque?

**41**

1  **A.**    Yes.  He purchased a firearm.
2  **Q.**    Is that the firearm that was discovered at his
3  grandmother's house?
4  **A.**    Yes, it was.
5      MR. VAVRICEK:  The Government moves to admit
6  Exhibit 2.
7      THE COURT:  Any objection?
8      MS. QUICK:  No, Your Honor.
9      THE COURT:  Two is received.
10      (Government's Exhibit 2 was offered and
11        received in evidence.)
12  **Q.**    Sir, if you would turn to Government Exhibit 3.  Do you
13  recognize Government Exhibit 3?
14  **A.**    Yes.  It's a Facebook post and subsequent
15  comments.  The original post is made by Tanya Love.  I
16  believe it was posted yesterday.
17  **Q.**    And do you know how Officer -- well, first of
18  all, did this come from Officer Schlosser?
19  **A.**    Yes, it did.
20  **Q.**    And do you know how Officer Schlosser knew about
21  this?
22  **A.**    On this one I'm not certain if -- if a witness
23  brought it to his attention or if he was just looking on
24  Facebook.
25  **Q.**    And what date did this -- date or dates did the

**42**

1  conversations or posts depicted in Exhibit 3 occur?
2  **A.**    My understanding is that Exhibit 3 occurred
3  yesterday, which would be the 18th.
4  **Q.**    Again, Tanya Love is the defendant's mother?
5  **A.**    Yes, she is.
6  **Q.**    And the other individuals -- do we know who the
7  other individuals are?
8  **A.**    Some of them; not all.  I believe at one point,
9  Damien Love comments on there.
10  **Q.**    So if you would please turn to the first page of
11  Exhibit 3, is it fair to say that Ms. Love is making
12  some threats against a woman who has quote -- well, I
13  won't read it, but messed with the wrong family?
14  **A.**    Yes.
15  **Q.**    And then -- and are -- is it your understanding
16  that Officer Schlosser was able to obtain these
17  Exhibits 1, 2 and 3 -- I'm sorry -- Exhibit 2 and 3 from
18  public access?  That is, there was no search warrant for
19  this information.
20  **A.**    That's correct.
21  **Q.**    Please turn to page 5.  On page 5 where it begins
22  with -- is that the comment of Damien Love?
23  **A.**    There is a comment from Damien Love on page 5.
24  There is also -- and I believe some of this is a little
25  bit kind of strangely spaced because of the nature of

to purchase a complete copy of the transcript.

43

1  printing from -- from Facebook and -- and that medium,
2  but --
3  **Q.**  So page 5 --
4  **A.**  -- four and five.
5  **Q.**  -- where it gets cut off, that's actually the
6  same as what's on page 6, correct, at the beginning?
7  That's not two posts.  That's just --
8  **A.**  Yes.  And that post is actually also shown on
9  page 4.
10  **Q.**  And would you please read into the record what
11  Damien Love said yesterday.
12  **A.**  This shit real at -- AF.  It's time for SM
13  cleaning street cleaning about to go down.  This shit
14  real.
15  **Q.**  Do you know what SM stands for?
16  **A.**  I believe some.
17  **Q.**  Do you know what AF stands for?
18  **A.**  No.  I don't know if it's a typo or --
19  **Q.**  It may be a typo for at?
20  **A.**  Yeah or as.
21  **Q.**  Have you had a chance to view a Facebook video
22  that the defendant earlier this month posted of himself?
23  **A.**  Yes, I did.
24  **Q.**  And what does that video depict?
25  **A.**  It depicts Mr. Love apparently smoking what looks

44

1  to be a marijuana blunt.
2  **Q.**  And does it indicate -- is there any indication
3  as to the time frame that he was engaged in this
4  activity that he videotaped?
5  **A.**  The video indicated that it was taken in November
6  of 2015.
7  MR. VAVRICEK:  The United States has no
8  further questions at this time.
9  THE COURT:  Cross-exam?
10  MS. QUICK:  Thank you,  Your Honor.
11  CROSS-EXAMINATION
12  BY MS. QUICK:
13  **Q.**  As far as you know, Mr. Love could legally own a
14  firearm.
15  **A.**  No.  Drug users are prohibited from possessing
16  firearms.
17  **Q.**  He's not being charged with being a drug user in
18  possession of a firearm, is he?
19  **A.**  He has not been charged with that as of now.
20  **Q.**  His permit at least was valid to carry?
21  **A.**  No, because he lied to obtain it.
22  **Q.**  So just to clarify on the guns that were found in
23  the car, turning to the night of the shooting, there was
24  mention of a Ruger that was found in the car; is that
25  correct?

45

1  **A.**  That's correct.
2  **Q.**  There was no evidence or forms to establish that
3  Mr. Love purchased that firearm; correct?
4  **A.**  The Ruger, no.
5  **Q.**  And Mr. Shaw stated he got it "from some guy in
6  Maquoketa"; is that correct?
7  **A.**  That's correct.
8  **Q.**  And turning to the night of the shooting,
9  Mr. Love was not present in the car; correct?
10  **A.**  Not that I'm aware of, no.
11  **Q.**  And you don't have any evidence that he was
12  involved in any way in the shooting that night; correct?
13  **A.**  That's correct.
14  **Q.**  Most of your -- Mr. Shaw came to the police with
15  evidence and stated that Mr. Love had given him these
16  firearms; correct?
17  **A.**  He indicated that Mr. Love had given those
18  firearms to Mr. Pete and that Shaw had obtained the
19  firearms through Pete.
20  **Q.**  Had he been arrested or arrested with a crime at
21  this time?
22  **A.**  Had Shaw been arrested with a --
23  **Q.**  Yes.
24  **A.**  Yes, he had.
25  **Q.**  He initially stated that those were his firearms

46

1  and his drugs; correct?
2  **A.**  That's correct.
3  **Q.**  And then he was charged with a crime soon after
4  that?
5  **A.**  Yes; that evening.
6  **Q.**  Do you know what he was charged with?
7  **A.**  Not specifically.
8  **Q.**  But he didn't come forward until after he had
9  been charged with a crime?
10  **A.**  That's correct.
11  **Q.**  And Ms. Duffy came forward shortly after Ms. Shaw
12  -- Mr. Shaw; is that correct?
13  **A.**  Yes.
14  **Q.**  Had Ms. Duffy been charged with a crime at that
15  time?
16  **A.**  Not that I'm aware of.
17  **Q.**  But she was present at the time of the shooting?
18  **A.**  Yes.
19  **Q.**  She was there when officers searched the vehicle;
20  correct?
21  **A.**  Yes.  And just to clarify, the shooting and the
22  search of the vehicle were two separate nights.
23  **Q.**  Okay.  But was she present when drugs were found?
24  **A.**  She was.
25  **Q.**  Beyond the allegation that Mr. Love gave the guns

to purchase a complete copy of the transcript.

47

1 to Mr. Pete I believe and then to Mr. Shaw, do you have
2 any connection between Mr. Shaw and Mr. Love?
3 **A.** Not that I know of.
4 **Q.** You don't have any information that he might have
5 known of Mr. Shaw's -- Mr. Love might have known of
6 Mr. Shaw's criminal history?
7 **A.** None that I'm aware of.
8 **Q.** Turning to the Facebook messages, could you
9 clarify did Ms. Duffy bring in the screen shot of the
10 messages?
11 **A.** I believe that she showed it to Mr. Schlosser and
12 that Mr. Schlosser took photos of it was my
13 understanding.
14 **Q.** So is this just a picture of her phone --
15 **A.** Yes.
16 **Q.** -- that she brought in?
17 **A.** That she provided.
18 **Q.** And this was after she had been charged with a
19 crime?
20 **A.** Ms. Duffy? I don't believe Ms. Duffy has been
21 charged with a crime.
22 **Q.** Oh, I'm sorry. After the shooting incident and
23 --
24 **A.** Yes.
25 **Q.** Her name isn't on this screen shot?

48

1 **A.** No.
2 **Q.** It doesn't -- it says Tuesday, but it doesn't
3 have an actual date on it; is that --
4 **A.** That's correct.
5 **Q.** Now, to the other Facebook -- the statuses from
6 Mr. Love's father and mother, you don't have any
7 evidence that Mr. Love told them to do this; correct?
8 **A.** No.
9 **Q.** Is it fair to say that sometimes people on social
10 media just in general can kind of puffery; get mad and
11 say things and not necessarily mean it?
12 **A.** It's possible.
13 MS. QUICK: I have no further questions.
14 THE COURT: Mr. Vavricek?
15 REDIRECT EXAMINATION
16 BY MR. VAVRICEK:
17 **Q.** Sir, I believe you indicated that it was illegal
18 for Mr. Love to obtain a firearm because he was a
19 prohibited person; that is, a marijuana user. Do you
20 recall that testimony?
21 **A.** I do.
22 **Q.** Does the Form 4473 require the defendant to
23 certify that he is not a marijuana user?
24 **A.** Yes, it does.
25 **Q.** And is it your understanding that on all the

49

1 Form 4473s that the defendant certified to purchase all
2 these firearms, he, in fact, would have certified that
3 he was not a marijuana user?
4 **A.** That's correct.
5 **Q.** When he obtained the gun permit, would he have
6 also been required to certify that he was not a user of
7 controlled substances such as marijuana?
8 **A.** Yes, he would.
9 MR. VAVRICEK: No further questions.
10 THE COURT: Ms. Quick?
11 MS. QUICK: No, Your Honor.
12 THE COURT: You may step down.
13 THE WITNESS: Thank you, Your Honor.
14 (Witness excused.)
15 THE COURT: Any additional evidence,
16 Mr. Vavricek?
17 MR. VAVRICEK: Just one matter, Your Honor.
18 I have a grand jury transcript of Mr. Love in a case
19 called Fonville and I would -- I have but one copy, I'm
20 afraid. I was -- as you know, I was in transit earlier
21 this week. I would ask that I show it to defense
22 counsel and then admit it as an exhibit.
23 THE COURT: Why don't you identify it first
24 as Exhibit 5 and then let Ms. Quick take a look at it.
25 MS. QUICK: I don't know what I'm looking

50

1 for in here. I'm reading it very quickly.
2 MR. VAVRICEK: Counsel has asked me to
3 explain the significance of this and --
4 THE COURT: Why don't you get back to a
5 microphone to make sure that we pick you up.
6 MR. VAVRICEK: Counsel has asked me to
7 explain the significance of it. It is a -- it's an
8 approximately 17 page document transcribed In the
9 Testimony of Landon Love in the Matter of Fonville. The
10 next thing I was going to do, Your Honor, was ask the
11 Court to take judicial notice of the Kendan Fudd
12 Fonville case in this district where the defendant,
13 Mr. Fonville, ultimately pled guilty to being a drug
14 user in possession of a firearm and was sentenced to
15 15 years in federal prison.
16 In this transcript, Mr. Love testifies
17 generally that he and another individual went down to
18 Cedar Rapids; went to a strip club; met up with at some
19 point Mr. Fonville, and in his testimony he said he --
20 he said he knew -- he said he didn't hang around people
21 like that. It was a pretty smooth night, and also
22 indicated that -- that's basically the substance of it
23 without getting into too many details.
24 THE COURT: And what's the significance of
25 that do you believe on this detention issue?

to purchase a complete copy of the transcript.

51

1    MR. VAVRICEK:  It shows that the defendant
2  -- we've heard testimony, although it was somewhat
3  halting and not completely definitive, but that the
4  defendant has a firearm; hangs around with marijuana
5  users.  Here we have an individual that in 2014 was also
6  a drug user in possession of a -- pled guilty to being a
7  drug user in possession of a firearm, so it goes to the
8  types of people that this individual is going to hang
9  out with whether or not he's working.  And so whether we
10  can know that the defendant will comply with the law.
11    THE COURT:  Seems like it has limited
12  probative value, but, Ms. Quick, do you have any
13  objection to the receipt of Exhibit 5?
14    MS. QUICK:  I would note that it seems
15  pretty irrelevant, but I don't have any objection.
16    THE COURT:  Exhibit 5 will be received.
17    (Government Exhibit 5 was offered and
18    received in evidence.)
19    THE COURT:  I assume perhaps because it's
20  grand jury testimony it should be filed under seal.
21    MR. VAVRICEK:  We would ask that all of the
22  exhibits today be filed under seal due to the nature of
23  the -- well, at least Exhibits 1, 2, 3 and 5 because the
24  first three involve grand jury witnesses who received
25  threats.

52

1    THE COURT:  Any objection?
2    MS. QUICK:  No, Your Honor.
3    THE COURT:  All right.  Exhibits 1, 2 and 3
4  and 5 will be docketed under seal.
5    Any additional evidence, Mr. Vavricek?
6    MR. VAVRICEK:  Just to make sure the record
7  is clear, I -- would the Court grant the Government's
8  motion for judicial notice of the Fonville case?
9    THE COURT:  I can take judicial notice of
10  the Fonville case.  Typically, I rule on the issue of
11  probable cause and detention, however, from the bench,
12  so I -- I'm not probably really going to have time to go
13  back and review that file.  I know generally that he did
14  plead guilty and I believe he's now been sentenced to a
15  term in federal prison.
16    What -- what else do you want me to notice
17  from that file?
18    MR. VAVRICEK:  Simply that the charge was
19  being a prohibited person in possession of a firearm.
20  That's what he was sentenced for.  Alternatively, I was
21  just trying to save time, but Officer Hunt worked on
22  that case and could quickly testify as to that case.
23    THE COURT:  Well, again, I have some
24  knowledge of that case because I was the assigned
25  magistrate judge.

53

1    MR. VAVRICEK:  Correct.
2    THE COURT:  And I -- I do know that -- in
3  fact, I think I took his guilty plea -- oh, I'm not sure
4  about that.  It might have been Judge Reade, but in any
5  event, it's my understanding he did plead guilty to
6  being -- being an unlawful drug user in possession of a
7  firearm.  I think he's been sentenced to a substantial
8  prison term.
9    Ms. Quick, is there any objection to me
10  taking judicial notice of those facts?
11    MS. QUICK:  No, Your Honor.
12    THE COURT:  Anything else, Mr. Vavricek?
13    MR. VAVRICEK:  That's all, Your Honor.
14    THE COURT:  Ms. Quick, do you have any
15  evidence you would like to offer?
16    MS. QUICK:  No, Your Honor; just to proffer
17  the Pretrial Services Report.
18    THE COURT:  The Court will take judicial
19  notice of the Pretrial Services Report.
20    Mr. Vavricek, do you wish to be heard by way
21  of argument?
22    MR. VAVRICEK:  Briefly, Your Honor.
23  Your Honor, we didn't go into all the details of
24  Exhibits 1, 2, 3, 4 -- and 4 here, but the Government
25  would ask the Court to carefully, of course, consider

54

1  those.  Here we have an individual who although
2  apparently has had some work history and we understand
3  that the pretrial services division has recommended the
4  defendant's release with certain conditions, based
5  primarily, it would appear, on the fact that the
6  defendant has a limited reported criminal history.  Of
7  course, the evidence here today provides a wealth of
8  information that the probation office didn't have when
9  it made that recommendation.
10    The defendant is a drug user and he likes to
11  carry firearms.  He has purchased as many as
12  eight firearms, and as Your Honor knows, drugs and
13  firearms are a particularly dangerous combination.  And
14  what should cause the Court particular concern is that
15  this defendant has attempted to interfere with the
16  testimony of a federal grand jury witness.  This
17  defendant's parents apparently have completely the
18  opposite reaction that parents should have when their
19  son is -- a grown man is in this position --
20    THE COURT:  To what --
21    MR. VAVRICEK:  -- and --
22    THE COURT:  To what extent can I hold the
23  defendant responsible for threats made by his parents?
24    MR. VAVRICEK:  I think, one -- I think it
25  would be -- of course, if he had no knowledge that his

to purchase a complete copy of the transcript.

---

**55**

1 parents were doing this, then I think you couldn't hold
2 him responsible for that.
3     THE COURT: What information was introduced
4 today that suggests that he did have knowledge?
5     MR. VAVRICEK: Well, one must first go back
6 to how this whole story unfolds. Let's -- let's look at
7 the events of this week. The defendant, after within a
8 week or so of contacting Ms. Duffy and making it clear
9 to her that she should not testify truthfully before the
10 grand jury, he then goes out and he buys a firearm and
11 he all this time is a marijuana user.
12     When he buys this firearm, then he's -- he's
13 arrested and a number of phone calls are made to get
14 this firearm out of the situation and it should -- the
15 Court can note that, as I recall the testimony, it was
16 that these particular witnesses, Ms. Duffy -- how else
17 would the parents know to contact Ms. Duffy? I think it
18 is a fair inference that the defendant, who knows
19 Ms. Duffy would be one of the people who could have told
20 them who to be making these threats about.
21     THE COURT: Well, maybe I misunderstood the
22 exhibits. As I understand Exhibit 2, it was a Facebook
23 posting by the defendant's father and Exhibit 3 is a
24 Facebook posting by his mother, along with various
25 responses.

---

**56**

1     MR. VAVRICEK: That's true, Your Honor.
2     THE COURT: Were those specifically directed
3 to Ms. Duffy?
4     MR. VAVRICEK: No; they're -- I mean they're
5 -- but they're public -- one of the things we brought
6 out, Your Honor, no; these are not like Exhibit 1.
7 Exhibit 1, the defendant is -- you know, gets
8 Ms. Duffy's phone and tells her to keep her mouth shut,
9 okay, knowing she testified before the grand jury or
10 is testifying before the grand jury and, of course, a
11 defendant doesn't know exactly when someone is
12 testifying before the grand jury.
13     But -- and Exhibit 2 and 3 are a bit
14 different. These are public postings, but these are in
15 the nature of threats and they are in the public and
16 they are putting out word -- word on the streets of
17 Dubuque that you better think twice before you cooperate
18 with the Government or something could happen to you and
19 the defendant himself this week bought a firearm. These
20 witnesses have a lot to be concerned about.
21     Respectfully, Your Honor, detention is the
22 only option here to protect the public. No -- in this
23 case, while defendants should take court orders
24 seriously, in this circumstance where the defendant
25 makes the statement towards a grand jury witness and

---

**57**

1 then purchases a firearm, respectfully, the words of the
2 Court to not contact witnesses are insufficient to
3 protect the public, including these particular
4 witnesses, from the defendant.
5     With respect to the probable cause for the
6 charges, there are a number of charges -- the
7 United States has not yet charged 922(g)(3), although
8 based on the evidence here today, the developments of
9 this week, it would appear a charge of
10 18 U.S.C. 922(g)(3), prohibited person in possession of
11 a firearm, would be quite strong, if not overwhelming,
12 and I would add that in this case we have an individual
13 who is purchasing all these firearms.
14     We have the testimony of individuals -- of
15 an individual -- not testimony, but statements of
16 individuals -- both Ms. Duffy and Mr. Shaw -- telling
17 the same story; that the defendant had reported these
18 stolen and in order to kind of -- and told them to
19 obliterate the serial numbers; clearly knowing that he
20 was purchasing these because he was able to get one of
21 these permits. He lied on the permit that he was the
22 actual buyer. He also lied on the permit when he said
23 he wasn't a prohibited person and clearly to engage in
24 the unlawful purchasing and, frankly, selling of these
25 firearms in Dubuque following a shooting. Thank you.

---

**58**

1     THE COURT: Let's break the argument into
2 two parts. First on the issue of probable cause, do you
3 wish to be heard on that, Ms. Quick?
4     MS. QUICK: Yes, Your Honor. So first I
5 want to just specifically address some of the evidence
6 that was presented today and the strength of it.
7 Looking at Exhibit 1, we have Ms. Duffy, who was pulled
8 over with drugs, evidence -- paraphernalia that's
9 consistent with drug trafficking, scales and weapons
10 after being involved in a shooting. After she's
11 detained, she walks in with a screen shot that is
12 provided by her that's a picture taken apparently by the
13 officer; doesn't include her name; doesn't include a
14 date stamp, so I would argue that it really has no
15 probative value considering the source and what we're
16 looking at here.
17     And then as far as the other Facebook
18 postings, I think the Court is correct. These are
19 statuses. There's no evidence that they were even
20 friends on Facebook. If it is public, the only way that
21 Ms. Duffy -- if that's what the Government is alleging
22 it was meant to be directed at is if she searched their
23 pages specifically and was trying to seek it out, so the
24 probative value of that is limited.
25     As far as the testimony today from

to purchase a complete copy of the transcript.

59

1 Ms. Kelly, she's obviously very flustered, obviously
2 surprised by having to testify today. Did seem that
3 there was lots of I don't know. She obviously didn't
4 know a lot about necessarily what the defendant does
5 with his free time when he's not at the home with her
6 and he's not using when he is with her. So that
7 evidence just in general I would ask the Court to give
8 it very little weight.
9         But looking at the probable cause, we have
10 first providing a firearm to a prohibited person. A lot
11 of this is coming from Mr. Shaw, who was charged with a
12 crime after a very serious incident where a gun was
13 shot. You know, he has a lot to lose. He admitted to
14 everything and then he wants to come back and cooperate
15 with police.
16         As to this charge, the Government has to
17 establish that Mr. Love had reason to know that Mr. Shaw
18 was a prohibited person and I think that's the weakest
19 point of this case. There's no evidence that they were
20 friends; had any reason to know that he had this
21 domestic abuse conviction and was unable to possess a
22 firearm. Anything else would be speculation.
23         THE COURT: What about the argument that the
24 firearms weren't provided to Shaw, but they were
25 provided to Pete and Ms. Kelly testified today that

60

1 Camron Pete was one of defendant's smoking buddies?
2         MS. QUICK: Well, I would say again as I
3 already mentioned that that evidence is weak. It
4 sounded like she was being pressed repeatedly by the
5 Government to come up with names. She was flustered.
6 She didn't seem very certain, so that's -- the value --
7 the probative value of that is incredibly weak,
8 Your Honor.
9         Turning to -- and I think the problems with
10 the first count are also the problems with the second
11 count. They're coming alot from Mr. Shaw, witnesses who
12 have a lot to lose and evidence that just is not
13 reliable for purposes of this hearing.
14         I can now turn to the issue of detention.
15         THE COURT: First, let me make the record on
16 -- on probable cause.
17         Mr. Vavricek, you sort of referred to it at
18 the end. I should have made it clearer that we were
19 going to have the two separate arguments.
20         Is there anything else you wanted to add on
21 the issue of probable cause?
22         MR. VAVRICEK: Thank you; briefly. And I --
23 probable cause is -- is -- we don't necessarily --
24 counsel wants to say well, it's -- it's weak or
25 something like that, but it's -- it's -- at this stage,

61

1 it's -- it's simply probable cause and there are these
2 statements. Counsel may say there are reasons that
3 there could be great cross-examination of it. I would
4 note there's nothing in the record that there's any
5 deals with the Government and either of those
6 individuals.
7         And as Your Honor identified, the testimony
8 is that Mr. Love sold the firearms to Mr. Pete and
9 Ms. Kelly, frankly, gave the Government wonderful
10 evidence today when she said that that was one of his
11 smoking buddies, so -- I would also note that these
12 firearms through the testimony -- these are the same
13 firearms. They're the firearms he bought and they end
14 up in that car with Pete and Shaw. All of this is
15 corroborated absent a videotape of -- of the sale which,
16 of course, in -- in the case of an illegal sale we don't
17 have. Thank you.
18         THE COURT: Ironically, it may be that the
19 best evidence against the defendant is that he's an
20 unlawful user of a controlled substance in possession of
21 a firearm, but he's not charged with that. He's charged
22 with providing a firearm to a prohibited person. Here,
23 there's evidence that the defendant either gave or sold
24 the firearms to Pete and that he is -- smokes marijuana
25 and the defendant knew that because he smokes marijuana

62

1 with him.
2         And then the second charge is making a false
3 statement with respect to the sale of a firearm. Here,
4 the defendant filled out records to purchase the
5 firearms and he, as I understand it, denied being an
6 unlawful user of marijuana, which would seem to be a
7 false statement and he also asserted that these firearms
8 were intended for himself even though within a
9 relatively short period of time they ended up in the
10 hands of others.
11         Now, again, I don't know whether I would
12 characterize all of that evidence as strong or weak, but
13 for purposes of probable cause, the Court finds that
14 there is probable cause to support those two charges.
15         So then we get to the issue of whether
16 defendant should be detained pending further
17 proceedings. I've heard Mr. Vavricek's argument on that
18 issue.
19         Ms. Quick, do you wish to be heard?
20         MS. QUICK: Yes, Your Honor. First,
21 considering the weight of the evidence, obviously the
22 Court has found probable cause, but I would assert it
23 doesn't get much higher than that. I won't repeat
24 myself, but I've already pointed out the problems with
25 the Government's evidence at this time.

to purchase a complete copy of the transcript.

63

1 Now, as far as connection to the community
2 and flight risk, he's been in the Dubuque area -- at
3 least in the Midwest -- all of his life. He was
4 originally -- as the Pretrial Services Report states, he
5 has been back and forth to Dubuque and been back in
6 Dubuque for a significant period of time; three years.
7 The mother of his child and his girlfriend is here. His
8 child is here. His family is here, so he does have
9 significant ties to the community.
10 And as established, he -- as the Pretrial
11 Services Report indicates, he could go back there. I
12 understand maybe after some of the testimony today, the
13 Court might be a little bit hesitant to do that, but he
14 is able to go back there and there are conditions that
15 could ensure that that is a good place to go back to as
16 suggested by the Pretrial Services Report. He's not
17 allowed to have firearms; not allowed to have firearms
18 in the home; prohibited from using or having illegal
19 substances, so he has significant ties to that home and
20 that area.
21 But I think the biggest indicator as
22 discussed by the Pretrial Services Report is he does not
23 really have a criminal history. He has two juvenile
24 cases that I would note that he was placed on probation
25 and my understanding is that they were dismissed. He

64

1 either was successful with probation or the case was
2 disposed of. So obviously without this criminal
3 history, there's no indications of failure to appear.
4 He was not on supervision at the time of this arrest or
5 the alleged conduct in the indictment.
6 So based on all of that, I would ask the
7 Court to either release him to go back to the home with
8 his girlfriend and his child with conditions. An
9 additional condition that is not -- oh, it is suggested,
10 but he not have contact with victims or witnesses.
11 Again, I don't think this is really strong evidence that
12 he is trying to contact Ms. Duffy, but if there are
13 those conditions, the Court order prohibiting him from
14 doing so could alleviate some of those concerns.
15 In the alternative, if this Court is
16 hesitant to release him to go back to the house with his
17 girlfriend and his child, releasing him to a halfway
18 house is another alternative for -- for this hearing.
19 THE COURT: In determining whether a
20 defendant should be released, the Court follows a
21 two-step process. The first step is to determine
22 whether detention is authorized. Here, the defendant is
23 charged with two firearm-related charges. I believe
24 that detention is authorized under Title 18
25 United States Code Section 3142(f)(1)(E).

65

1 The second step is to determine whether
2 there's any condition or combination of conditions which
3 will reasonably assure the defendant's appearance as
4 required and the safety of the community. The
5 Government has the burden of proof in this regard. The
6 factors which the Court must consider are set forth in
7 Section 3142(g).
8 They include the nature and circumstances of
9 the offense charged, including whether the offense is a
10 crime of violence or involves a narcotic drug or minor
11 victim or firearm. Here, the charges involve the
12 purchase -- the illegal purchase of firearms and the
13 illegal sale or otherwise providing firearms to
14 prohibited persons.
15 The Court's required to consider the weight
16 of the evidence. Here, there would appear to be strong
17 evidence that the defendant was an unlawful user of
18 marijuana at the time that he purchased these guns. I
19 didn't see the paperwork defendant filled out, but
20 according to Special Agent Hunt, the defendant certified
21 that he was not an unlawful user of a controlled
22 substance, so it would seem that there is strong
23 evidence that he made false statements in connection
24 with the purchase of these firearms.
25 In addition, there's at least -- well,

66

1 two people at least will testify that the defendant
2 provided at least some of these firearms to Pete and
3 there is evidence that the defendant knew that Pete was
4 an unlawful user of a controlled substance, so, you
5 know, obviously I didn't hear those two witnesses. I
6 don't have any way of judging their credibility.
7 Eventually, I guess, the jury will decide whether or not
8 they're telling the truth or lying. But if they are to
9 be believed, then there is good evidence, substantial
10 evidence that the defendant provided these guns to a
11 prohibited person.
12 The Court is also required to consider the
13 history and characteristics of the defendant, including
14 the defendant's character, physical and mental
15 condition, family ties, employment, financial resources
16 and ties to the community. This information is found in
17 the Pretrial Services Report.
18 The defendant was born in Milwaukee. He
19 moved to Dubuque at age 15 and then moved back to
20 Milwaukee at age 18 and then returned to Dubuque at age
21 -- about age 20. He's now 23 years old. So he's lived
22 sort of back and forth between Dubuque and Milwaukee for
23 the last eight years or so.
24 At the time of his arrest, he was living
25 with his girlfriend. His girlfriend has testified here

to purchase a complete copy of the transcript.

67

1  today that he could return to that residence if he's
2  released.  The defendant's never been married, but he
3  does have a one-year-old daughter with his girlfriend,
4  Ms. Kelly.
5          The defendant has been unemployed for the
6  last couple of months.  Since he's been back in Dubuque
7  or at least the last two years, he's had I think I
8  counted five different jobs.  Although on the
9  defendant's credit, I will say that he seems to be able
10 to find work all the time.  According to the dates he
11 gave the pretrial services officer, he pretty much went
12 from one job right to the next job, so it doesn't look
13 like he's out of work for very long.
14         The defendant's in good physical health;
15 denies any mental health issues.  Defendant admitted
16 that he's used marijuana on weekends since age 17 and
17 that he last used about a week ago.
18         The Court's required to consider the
19 defendant's past conduct, including criminal history and
20 record concerning appearances at court proceedings.  The
21 defendant was charged in Dubuque County on -- as a
22 juvenile on what appear to be probably simple
23 misdemeanors.  There was a consent decree entered and
24 then he apparently successfully completed the probation
25 associated with that and then the charges were

68

1  dismissed.  That was actually -- it looks like he was
2  only on probation for just a couple months.
3          Then in 2012, he was charged with battery.
4  According to the defendant, that involved an altercation
5  with his father.  The disposition of that charge is
6  unknown.  It was a little bit after that time the
7  defendant returned to Dubuque and then just earlier this
8  week he was stopped in a traffic stop; charged with
9  driving under suspension and 20 grams of marijuana was
10 found on his person and he was charged with possession
11 of marijuana.  Obviously, those charges are still
12 pending.
13         And finally, the Court's required to
14 consider the nature and seriousness of the danger to any
15 person or the community that would be posed by the
16 defendant's release.  This case involves the unlawful
17 acquisition of guns and the alleged unlawful disposition
18 of guns.  It -- it appears that perhaps one or more of
19 those guns was involved in a shooting on December 1.
20         If I understand the testimony correctly,
21 there was a shooting on December 1 and then the vehicle
22 being driven by Shaw was stopped on December 5 and guns
23 were found -- three guns I think were found in the car.
24 Two of those guns were guns that had been previously
25 purchased by the defendant.  Mr. Shaw and Ms. Duffy

69

1  later told police that they were at the shooting on
2  December 1, together with Camron Pete, and that it was
3  Mr. Pete who did the shooting.
4          Four days later, Mr. Pete was in possession
5  of a gun that had been purchased by the defendant on
6  September 11, so I don't know that police know whether
7  that was the gun that was used on December 1, four days
8  earlier.  There were, I think, spent shells or something
9  recovered at the scene on December 1 and I don't know if
10 any effort has been made to match those up with -- with
11 the gun or if that's even possible.  But it looks likely
12 that these guns that the defendant bought were later in
13 the hands of folks who were involved in a shooting.
14         It's apparent that the defendant likes guns
15 and he likes drugs.  He smokes marijuana weekly.  He
16 lied to obtain a carry permit and then he lied to
17 purchase eight guns.  In fact, he bought eight guns over
18 a stretch of six months or so, and as I've indicated, a
19 number of those guns ended up in the hands of bad guys.
20         Now, there's no indication the defendant was
21 at the shooting on December 1, but the defendant
22 apparently likes going in and buying guns and then these
23 guns one way or another end up in the hands of folks who
24 apparently are willing to use them.
25         You know, at that point, frankly, I was sort

70

1  of undecided about whether the defendant should be
2  released.  There are good arguments to make -- I think
3  Ms. Quick has made them -- that the defendant should be
4  released.  He has ties to the community, although,
5  frankly, his ties to Milwaukee are probably just as
6  good.  He isn't currently employed, but he's regularly
7  employed.  He seems to be able to find work.
8          You know, on the other hand, he's buying all
9  these guns and they're ending up in the hands of bad
10 guys, but there's no indication that he was present
11 during any of the shooting, so at this point, I'm -- I
12 was kind of undecided.
13         But what really concerns me is the fact that
14 the Government then was conducting an investigation into
15 these events and apparently had Ms. Duffy appear and
16 testify before a grand jury and Mr. Love gets wind of
17 that -- the defendant, Landon Love, gets wind of that
18 and he sends some text messages to Ms. Duffy telling her
19 to keep her mouth shut, and at the least it's an implied
20 threat.
21         And I'm confident that Exhibit 1 is -- is
22 legitimate.  I mean I can't imagine that
23 Officer Schlosser would somehow mock-up a text message
24 and then take a photograph of it to introduce and then
25 claim that he got it from Ms. Duffy.  I mean there's no

to purchase a complete copy of the transcript.

**71**

1  reason to believe that this is not an accurate

2  communication between the defendant and Ms. Duffy.

3        Incidentally, before I go on, I'm not giving

4  any weight to Exhibits 2 and 3. It's clear that the

5  defendant's parents need to get their act together or

6  they could be facing charges of trying to influence a

7  witness in a criminal investigation, but, you know,

8  Landon Love is not responsible for whatever stupid

9  things his parents do, so I'm not considering Exhibits 2

10 and 3.

11       But I do consider Exhibit 1 as a threat and

12 -- or at least an implied threat, and so the sequence of

13 events here is that Duffy testifies. She gets this

14 implicit threat from the defendant, and then while all

15 this is going down, he goes out and buys another gun.

16 That is scary to me, and that, frankly, tipped the scale

17 in my mind in favor of detention.

18       So I'm going to find that the defendant

19 should be detained pending the further proceedings in

20 this case.

21       Mr. Love, you have the right to appeal my

22 decision by filing a motion for review by Chief Judge

23 Linda Reade and your attorney can advise you on how

24 that's done.

25       Is there anything else we need to talk

**72**

1  about, Mr. Vavricek?

2        MR. VAVRICEK: No, Your Honor.

3        THE COURT: Ms. Quick?

4        MS. QUICK: No, Your Honor.

5        THE COURT: That will conclude the hearing.

6        (Proceedings concluded at 4:08 p.m.)

**73**

4         C E R T I F I C A T E

6    I, Kay C. Carr, a Certified Shorthand Reporter of

7  the State of Iowa, do hereby certify that I acted as the
   official court reporter at the proceedings in the

8  above-entitled matter at the time and place indicated.

9    That I reported in shorthand all of the proceedings
   had at the said time and place and that said shorthand

10 notes were reduced to print by means of a computer-aided
   transcription device under my direction and supervision,

11 and that the foregoing typewritten pages are a full and
   complete transcript of the shorthand notes so taken.

12   I further certify that I am not related to or
   employed by any of the parties to this proceeding, and

13 further that I am not a relative or employee of any
   attorney of counsel employed by the parties hereto or

14 financially interested in the action.

15   IN WITNESS WHEREOF, I have set my hand this 27th
   day of February, 2016.

18       /s/ Kay C. Carr
19     Kay C. Carr
       Certified Shorthand Reporter
20     Registered Professional Reporter
       Cedar Rapids, Iowa
       (319) 362-1543

**74**

3         C E R T I F I C A T E

5    I, Kay C. Carr, a Certified Shorthand Reporter of
   the State of Iowa, do hereby certify that the foregoing

6  is a correct copy of the transcript previously filed
   with the Clerk of Court, incorporating redactions of

7  personal identifiers and any other redactions ordered by
   the Court, in accordance with Administrative Order

8  08-AO-0009-P.

10   IN WITNESS WHEREOF, I have set my hand this 5th day
   of March, 2016.

       /s/ Kay C. Carr
13     Kay C. Carr
       Certified Shorthand Reporter
14     Registered Professional Reporter
       Cedar Rapids, Iowa
15     (319) 362-1543

to purchase a complete copy of the transcript.

## $

**$149** [1] - 32:14
**$90** [1] - 32:16

## 1

**1** [26] - 2:12, 24:13, 38:11, 38:12, 38:13, 38:15, 38:16, 39:4, 39:7, 39:8, 39:15, 42:17, 51:23, 52:3, 53:24, 56:6, 56:7, 58:7, 68:19, 68:21, 69:2, 69:7, 69:9, 69:21, 70:21, 71:11
**10** [1] - 32:14
**11** [1] - 69:6
**14th** [2] - 39:25, 40:20
**15** [2] - 50:15, 66:19
**15th** [1] - 32:4
**16** [1] - 33:12
**16-mj-0039** [1] - 3:3
**16th** [2] - 32:10, 35:2
**17** [2] - 50:8, 67:16
**18** [6] - 2:4, 6:8, 18:6, 57:10, 64:24, 66:20
**18th** [1] - 42:3
**1st** [1] - 25:25

## 2

**2** [17] - 2:13, 38:11, 39:20, 39:21, 39:22, 40:24, 41:6, 41:10, 42:17, 51:23, 52:3, 53:24, 55:22, 56:13, 71:4, 71:9
**20** [5] - 2:4, 33:14, 33:15, 66:21, 68:9
**2000** [2] - 24:13, 33:12
**2012** [2] - 18:6, 68:3
**2014** [1] - 51:5
**2015** [11] - 18:8, 24:14, 24:15, 28:19, 29:24, 29:25, 32:3, 32:12, 32:14, 33:13, 44:6
**2016** [5] - 32:4, 33:13, 35:2, 38:18, 38:20
**23** [3] - 2:5, 6:10, 66:21
**24th** [1] - 24:25
**2909-and-a-half** [1] - 4:22

## 3

**3** [16] - 2:14, 38:11, 41:12, 41:13, 42:1, 42:2, 42:11, 42:17, 51:23, 52:3, 53:24, 55:23, 56:13, 71:4, 71:10
**30** [3] - 27:21, 27:25
**3142(f)(1)(E)** [1] - 64:25
**3142(g)** [1] - 65:7
**33** [2] - 2:15
**380** [1] - 32:13

## 39

**39** [2] - 2:12
**3rd** [1] - 28:19

## 4

**4** [11] - 2:4, 2:15, 33:1, 33:2, 33:3, 33:20, 33:23, 33:24, 43:9, 53:24
**40** [1] - 9:13
**41** [2] - 2:13
**44** [1] - 2:5
**442** [1] - 34:2
**4473** [5] - 34:2, 34:7, 34:12, 37:19, 48:22
**4473s** [4] - 37:17, 37:23, 38:1, 49:1
**48** [1] - 2:5
**4:08** [1] - 72:6

## 5

**5** [13] - 2:16, 32:11, 42:21, 42:23, 43:3, 49:24, 51:13, 51:16, 51:17, 51:23, 52:4, 68:22
**51** [2] - 2:16
**52001** [1] - 4:23
**5th** [3] - 24:15, 32:7, 32:8

## 6

**6** [1] - 43:6
**6th** [2] - 5:17, 15:1

## 9

**9** [3] - 27:12, 27:21, 38:20
**90** [1] - 27:20
**922(g)(3** [2] - 57:7, 57:10
**9:38** [1] - 35:8
**9th** [1] - 38:18

## A

**ability** [1] - 22:21
**able** [4] - 18:24, 42:16, 57:20, 63:14, 67:9, 70:7
**absent** [1] - 61:15
**abuse** [2] - 29:3, 59:21
**access** [1] - 42:18
**according** [2] - 65:20, 67:10, 68:4
**account** [1] - 17:8
**accurate** [3] - 24:2, 33:6, 71:1
**acquire** [2] - 28:24, 36:9
**acquiring** [1] - 34:20
**acquisition** [1] - 68:17
**act** [1] - 71:5
**activity** [1] - 44:4

**actual** [5] - 34:10, 34:18, 38:2, 48:3, 57:22
**add** [2] - 57:12, 60:20
**addition** [1] - 65:25
**additional** [4] - 23:6, 49:15, 52:5, 64:9
**additionally** [4] - 25:19, 28:25, 31:15, 33:14
**address** [2] - 37:15, 58:5
**admit** [4] - 33:20, 39:4, 41:5, 49:22
**admitted** [2] - 59:13, 67:15
**advise** [1] - 71:23
**advised** [2] - 35:18, 37:14
**AF** [2] - 43:12, 43:17
**afraid** [1] - 49:20
**age** [5] - 66:19, 66:20, 66:21, 67:16
**Agent** [1] - 65:20
**agent** [4] - 23:20, 23:23, 23:25, 28:10
**ago** [1] - 67:17
**ain't** [1] - 39:17
**Alcohol** [2] - 23:20, 34:1
**allegation** [1] - 46:25
**alleged** [3] - 19:3, 64:5, 68:17
**alleging** [1] - 58:21
**alleviate** [1] - 64:14
**allow** [1] - 28:18
**allowed** [3] - 35:12, 63:17
**alot** [1] - 60:11
**altercation** [1] - 68:4
**alternative** [2] - 64:15, 64:18
**alternatively** [1] - 52:20
**America** [1] - 3:2
**ammunition** [3] - 25:6, 25:8, 25:10
**answer** [7] - 10:24, 10:25, 12:22, 13:4, 16:17, 16:18, 16:21
**answering** [1] - 12:21
**answers** [3] - 12:10, 34:13
**anticipation** [1] - 32:19
**apartment** [4] - 35:11, 36:16, 37:3, 37:13
**apologize** [1] - 40:16
**apparent** [1] - 69:14
**appeal** [1] - 71:21
**appear** [6] - 54:5, 57:9, 64:3, 65:16, 67:22, 70:15
**appearance** [1] - 65:3
**appearances** [1] - 67:20
**applied** [3] - 5:8, 18:20, 20:20
**apply** [2] - 20:4, 20:15
**applying** [2] - 18:14, 18:16
**appointed** [1] - 11:8
**approach** [2] - 32:21, 38:5
**area** [2] - 63:2, 63:20
**areas** [1] - 26:9

**argue** [1] - 58:14
**argument** [5] - 6:16, 53:21, 58:1, 59:23, 62:17
**arguments** [2] - 60:19, 70:2
**arrest** [6] - 35:22, 40:21, 40:22, 40:23, 64:4, 66:24
**arrested** [11] - 9:17, 9:24, 13:7, 16:1, 35:22, 35:23, 37:5, 45:20, 45:22, 55:13
**arrived** [1] - 35:13
**Asbury** [1] - 24:15
**assert** [1] - 62:22
**asserted** [1] - 62:7
**asserting** [1] - 16:22
**assigned** [1] - 52:24
**assist** [1] - 24:7
**Assistant** [1] - 3:6
**associate** [2] - 7:22, 15:23
**associated** [2] - 25:7, 67:25
**associates** [3] - 8:1, 8:6, 8:22
**assume** [1] - 51:19
**assure** [1] - 65:3
**ATF** [4] - 28:10, 31:6, 34:6
**attempt** [2] - 11:20, 28:12
**attempted** [1] - 54:15
**attention** [3] - 9:16, 39:13, 41:23
**attorney** [4] - 12:11, 12:12, 22:16, 71:23
**Attorney** [2] - 3:6, 3:8
**authorized** [2] - 64:22, 64:24
**Auto** [2] - 7:3, 7:4
**Avenue** [2] - 4:22, 34:25
**aware** [7] - 17:4, 31:16, 33:9, 36:20, 45:10, 46:16, 47:7

## B

**background** [2] - 12:2, 28:25
**backpack** [1] - 27:11
**bad** [2] - 69:19, 70:9
**baggies** [1] - 27:8
**based** [4] - 28:9, 54:4, 57:8, 64:6
**basic** [1] - 12:14
**battery** [1] - 68:3
**bed** [2] - 15:14, 15:16
**bedroom** [2] - 16:14, 36:6
**began** [1] - 35:7
**beginning** [1] - 43:6
**begins** [1] - 42:21
**belonged** [1] - 25:17
**belt** [1] - 21:6
**bench** [1] - 52:11
**best** [3] - 8:23, 33:5, 61:19
**better** [1] - 56:17
**between** [6] - 14:6, 32:3,

Visit www.oasisreporting.com
to purchase a complete copy of the transcript.

38:17, 47:2, 66:22, 71:2
**beyond** [1] - 46:25
**big** [1] - 14:1
**biggest** [1] - 63:21
**Bird** [4] - 20:5, 20:6, 20:8, 20:18
**Birds** [1] - 20:6
**birth** [1] - 13:16
**bit** [4] - 42:25, 56:13, 63:13, 68:6
**blocked** [2] - 17:14, 17:21
**blunt** [1] - 44:1
**boom** [1] - 30:23
**born** [2] - 13:18, 66:18
**bought** [6] - 15:5, 32:13, 56:19, 61:13, 69:12, 69:17
**box** [1] - 27:12
**boxes** [1] - 36:10
**boyfriend** [1] - 17:10
**break** - 9:15, 58:1
**briefly** [2] - 53:22, 60:22
**bring** [2] - 37:13, 47:9
**brought** [4] - 39:12, 41:23, 47:16, 56:5
**buddies** [2] - 60:1, 61:11
**Burden** [2] - 4:22, 34:25
**burden** [1] - 65:5
**Bureau** [2] - 23:20, 34:1
**business** [2] - 31:18, 34:4
**businesses** [2] - 31:16, 32:6
**Butler** [1] - 9:11
**butt** [1] - 28:8
**buy** [1] - 31:23
**buyer** [3] - 34:10, 34:19, 57:22
**buying** [2] - 69:22, 70:8
**buys** [4] - 15:7, 55:10, 55:12, 71:15
**BY** [4] - 4:13, 18:3, 20:2, 23:16, 44:12, 48:16

## C

**caliber** [1] - 32:13
**Cam** [1] - 8:12
**Cam's** [1] - 8:15
**Camron** [4] - 24:18, 25:18, 60:1, 69:2
**capacity** [2] - 28:1, 28:3
**car** [11] - 18:17, 20:14, 25:4, 26:3, 26:14, 26:15, 44:23, 44:24, 45:9, 61:14, 68:23
**card** [1] - 5:13
**care** [2] - 21:3, 21:5
**careful** [1] - 11:20
**carefully** [1] - 53:25
**cares** [1] - 10:21
**carried** [1] - 21:22
**carry** [11] - 14:9, 14:11, 14:13, 21:23, 22:2, 28:17, 28:24, 29:1, 44:20, 54:11,

69:16
**carrying** [1] - 14:10
**cars** [1] - 20:18
**case** [21] - 3:2, 12:4, 23:23, 23:25, 24:1, 31:21, 49:18, 50:12, 52:8, 52:10, 52:22, 52:24, 56:23, 57:12, 59:19, 61:16, 64:1, 68:16, 71:20
**cases** [1] - 63:24
**CDL** [2] - 20:25, 21:7
**Cedar** [1] - 50:18
**cell** [1] - 35:13
**center** [1] - 36:12
**certain** [7] - 12:19, 19:18, 19:19, 28:21, 41:22, 54:4, 60:6
**certainly** [2] - 35:5, 39:16
**certification** [1] - 36:8
**certified** [5] - 37:19, 38:2, 49:1, 49:2, 65:20
**certify** [3] - 34:12, 48:23, 49:6
**chance** [1] - 43:21
**character** [1] - 66:14
**characteristics** [1] - 66:13
**characterize** [1] - 62:12
**charge** [7] - 9:18, 9:21, 52:18, 57:9, 59:16, 62:2, 68:5
**charged** [20] - 9:19, 18:9, 44:17, 44:19, 46:3, 46:6, 46:9, 46:14, 47:18, 47:21, 57:7, 59:11, 61:21, 64:23, 65:9, 67:21, 68:3, 68:8, 68:10
**charges** [10] - 9:20, 24:22, 57:6, 62:14, 64:23, 65:11, 67:25, 68:11, 71:6
**chauffeur's** [1] - 20:25
**check** [1] - 28:25
**Chevrolet** [1] - 20:8
**Chief** [1] - 71:22
**child** [10] - 5:2, 6:11, 13:16, 13:18, 15:18, 35:10, 63:7, 63:8, 64:8, 64:17
**circumstance** [1] - 56:24
**circumstances** [1] - 65:8
**city** [1] - 4:19
**claim** [1] - 70:25
**claimed** [1] - 26:21
**claims** [1] - 24:20
**clarification** [1] - 33:18
**clarifications** [1] - 33:19
**clarify** [3] - 44:22, 46:21, 47:9
**cleaning** [2] - 43:13
**clear** [5] - 15:15, 21:11, 52:7, 55:8, 71:4
**clearer** [1] - 60:18
**clearly** [2] - 57:19, 57:23
**closest** [1] - 8:20
**closet** [8] - 16:8, 16:9, 16:10, 16:10, 36:19, 36:6,

36:15, 36:25
**club** [1] - 50:18
**clue** [1] - 7:21
**cocaine** [2] - 27:6, 27:14
**Code** [1] - 64:25
**combination** [2] - 54:13, 65:2
**coming** [3] - 10:18, 59:11, 60:11
**comment** [2] - 42:22, 42:23
**comments** [3] - 2:14, 41:15, 42:9
**committed** [1] - 3:11
**commonly** [1] - 34:6
**communication** [1] - 71:2
**community** [6] - 63:1, 63:9, 65:4, 66:16, 68:15, 70:4
**company** [1] - 18:19
**complaint** [1] - 3:12
**complete** [2] - 34:5, 34:14
**completed** [1] - 67:24
**completely** [2] - 51:3, 54:17
**comply** [1] - 51:10
**conceal** [1] - 28:12
**concern** [1] - 54:14
**concerned** [1] - 56:20
**concerning** [1] - 67:20
**concerns** [3] - 64:13, 64:14, 70:13
**conclude** [1] - 72:5
**concluded** [1] - 72:6
**concurrently** [1] - 29:22
**condition** [3] - 64:9, 65:2, 66:15
**conditions** [4] - 54:4, 63:14, 64:8, 65:2
**conduct** [2] - 36:1, 64:5, 67:19
**conducted** [2] - 24:16, 27:7, 35:10
**conducting** [1] - 70:14
**confident** [1] - 70:21
**connection** [3] - 47:2, 63:1, 65:23
**consent** [1] - 67:23
**consider** [7] - 53:25, 65:6, 65:15, 66:12, 67:18, 68:14, 71:11
**considered** [1] - 28:3
**considering** [3] - 58:15, 62:21, 71:9
**consistent** [1] - 58:9
**consult** [1] - 12:12
**contact** [12] - 16:3, 16:6, 35:7, 37:16, 37:22, 40:7, 40:8, 40:10, 55:17, 57:2, 64:10, 64:12
**contacted** [3] - 16:5, 36:22, 40:3
**contacting** [1] - 55:8

**contacts** [1] - 31:6
**continue** [2] - 31:14, 36:4
**controlled** [5] - 24:21, 49:7, 61:20, 65:21, 66:4
**conversation** [1] - 39:1
**conversations** [1] - 42:1
**convicted** [1] - 18:11
**conviction** [2] - 29:2, 59:21
**cooperate** [2] - 56:17, 59:14
**copies** [1] - 37:23
**copy** [1] - 49:19
**correct** [36] - 9:21, 14:25, 20:21, 21:2, 21:13, 21:24, 26:25, 27:10, 27:22, 31:25, 32:17, 33:9, 34:13, 38:3, 38:4, 42:20, 43:6, 44:25, 45:1, 45:3, 45:6, 45:7, 45:9, 45:12, 45:13, 45:16, 46:1, 46:2, 46:10, 46:12, 46:20, 48:4, 48:7, 49:4, 53:1, 58:18
**correctly** [1] - 68:20
**corroborate** [1] - 26:9
**corroborated** [1] - 61:15
**Cottingham** [1] - 9:11
**counsel** [8] - 11:8, 22:13, 22:15, 49:22, 50:2, 50:6, 60:24, 61:2
**count** [2] - 60:10, 60:11
**counted** [1] - 67:8
**counter** [1] - 34:5
**County** [1] - 67:21
**couple** [2] - 67:6, 68:2
**course** [7] - 35:5, 35:15, 53:25, 54:7, 54:25, 56:10, 61:16
**COURT** [70] - 3:1, 3:18, 3:21, 3:24, 4:3, 4:7, 5:24, 6:1, 10:16, 10:20, 11:3, 11:6, 11:11, 11:15, 12:1, 12:6, 12:9, 12:14, 12:18, 12:24, 13:2, 16:20, 16:24, 17:24, 19:24, 23:1, 23:3, 23:6, 23:9, 23:14, 32:22, 33:21, 33:23, 38:6, 39:5, 39:7, 40:14, 41:7, 41:9, 44:9, 48:14, 49:10, 49:12, 49:15, 49:23, 50:4, 50:24, 51:11, 51:16, 51:19, 52:1, 52:3, 52:9, 52:23, 53:2, 53:12, 53:14, 53:18, 54:20, 54:22, 55:3, 55:21, 56:2, 58:1, 59:23, 60:15, 61:18, 64:19, 72:3, 72:5
**Court** [20] - 3:1, 35:3, 50:11, 52:7, 53:18, 53:25, 54:14, 55:15, 57:2, 58:18, 59:7, 62:13, 62:22, 63:13, 64:7, 64:13, 64:15, 64:20, 65:6, 66:12
**court** [5] - 3:7, 11:8, 11:23, 56:23, 67:20

Case 1:16-mj-00039-JSS-3 Filed 06/01/16
eScribers.com
to purchase a complete copy of the transcript.

**Court's** [3] - 65:15, 67:18, 68:13

**court-appointed** [1] - 11:8
**coworkers** [1] - 6:18
**crack** [1] - 27:6
**created** [1] - 38:24
**credibility** [1] - 66:6
**credit** [1] - 67:9
**crime** [1] - 3:11, 10:25, 18:9, 45:20, 46:3, 46:9, 46:14, 47:19, 47:21, 59:12, 65:10
**criminal** [7] - 3:12, 47:6, 54:6, 63:23, 64:2, 67:19, 71:7
**cross** [3] - 21:9, 44:9, 61:3
**CROSS** [3] - 2:2, 18:2, 44:11
**cross-exam** [1] - 44:9
**CROSS-EXAMINATION** [2] - 18:2, 44:11
**cross-examination** - 21:9, 61:3
**cut** [1] - 43:5

### D

**Damien** [3] - 39:22, 40:14, 40:17, 40:19, 42:9, 42:22, 42:23, 43:11
**danger** [1] - 68:14
**dangerous** [2] - 36:18, 54:13
**database** [1] - 30:21
**date** [6] - 38:19, 39:24, 41:25, 48:3, 58:14
**dates** [3] - 33:13, 41:25, 67:10
**daughter** [3] - 10:11, 18:22, 67:3
**days** [5] - 32:12, 32:14, 40:22, 69:4, 69:7
**deal** [1] - 34:4
**dealer** [2] - 7:14, 37:8
**dealerships** [4] - 18:17, 18:19, 20:3, 20:14
**deals** [1] - 61:5
**debit** [1] - 5:13
**December** [18] - 5:17, 6:22, 15:1, 24:13, 24:15, 24:24, 24:25, 25:25, 32:7, 32:8, 68:19, 68:21, 68:22, 69:2, 69:7, 69:9, 69:21
**decide** [1] - 66:7
**decision** [1] - 71:22
**decree** [1] - 67:23
**defendant** [79] - 3:7, 3:11, 4:24, 6:7, 6:13, 7:9, 9:23, 13:11, 13:19, 13:21, 14:16, 15:2, 15:25, 16:21, 17:8, 18:13, 20:3, 21:22, 24:12, 30:13, 31:2, 37:18, 37:20, 38:1, 40:8, 40:18, 40:24,

43:22, 48:22, 49:1, 50:12, 51:1, 51:4, 51:10, 54:6, 54:10, 54:15, 54:23, 55:7, 55:18, 56:7, 56:11, 56:19, 56:24, 57:4, 57:17, 59:4, 61:19, 61:23, 61:25, 62:4, 62:16, 64:20, 64:22, 65:17, 65:19, 65:20, 66:1, 66:3, 66:10, 66:13, 66:18, 67:5, 67:15, 67:21, 68:4, 68:7, 68:25, 69:5, 69:12, 69:14, 69:20, 69:21, 70:1, 70:3, 70:17, 71:2, 71:14, 71:18
**defendant's** [20] - 17:2, 17:5, 34:25, 37:11, 40:21, 40:22, 40:23, 42:4, 54:4, 54:17, 55:23, 60:1, 65:3, 66:14, 67:2, 67:9, 67:14, 67:19, 68:16, 71:5
**defendants** [1] - 56:23
**defense** [1] - 49:21
**definitely** [1] - 36:25
**definitions** [2] - 34:15, 34:17
**definitive** [1] - 51:3
**denied** [1] - 62:5
**denies** [1] - 67:15
**Department** [1] - 24:8
**department** [3] - 10:2, 10:3, 24:25
**depict** [1] - 43:24
**depicted** [1] - 42:1
**depiction** [1] - 38:24
**depicts** [1] - 43:25
**Depot** [1] - 32:15
**describe** [3] - 13:25, 19:20, 28:5
**described** [1] - 3:11
**description** [1] - 26:15
**details** [2] - 50:23, 53:23
**detained** [5] - 3:13, 24:22, 58:11, 62:16, 71:19
**detention** [9] - 3:4, 32:19, 50:25, 52:11, 56:21, 60:14, 64:22, 64:24, 71:17
**determination** [1] - 25:9
**determine** [5] - 3:10, 36:13, 37:18, 64:21, 65:1
**determined** [3] - 30:17, 32:2, 37:20
**determining** [1] - 64:19
**developments** [1] - 57:8
**difference** [1] - 14:6
**different** [4] - 32:5, 32:15, 56:14, 67:8
**digital** [1] - 27:12
**DIRECT** [3] - 2:2, 4:12, 23:15
**directed** [2] - 56:2, 58:22
**directly** [1] - 31:18
**discover** [2] - 32:1, 32:11
**discovered** [1] - 41:2
**discussed** [1] - 63:22
**dismissed** [2] - 63:25,

68:1
**disposed** [1] - 64:2
**disposition** [2] - 68:5, 68:17
**distance** [1] - 28:7
**district** [1] - 50:12
**division** [1] - 54:3
**docketed** [1] - 52:4
**document** [1] - 50:8
**documents** [1] - 36:7
**domestic** [2] - 29:3, 59:21
**done** [3] - 28:25, 31:5, 71:24
**door** [1] - 35:8
**down** [11] - 4:8, 17:18, 20:19, 23:3, 26:13, 27:7, 31:10, 43:13, 49:12, 50:17, 71:15
**draw** [1] - 9:16
**drive** [1] - 21:1
**drive's** [1] - 26:20
**driven** [2] - 26:6, 68:22
**driver's** [1] - 36:9
**driving** [1] - 68:9
**drug** [11] - 7:14, 19:4, 44:15, 44:17, 50:13, 51:6, 51:7, 53:6, 54:10, 58:9, 65:10
**drugs** [5] - 46:1, 46:23, 54:12, 58:8, 69:15
**Dubuque** [26] - 4:20, 4:22, 5:20, 7:3, 7:4, 20:9, 24:8, 24:14, 24:16, 26:9, 31:22, 32:13, 35:1, 36:12, 40:25, 56:17, 57:25, 63:2, 63:5, 63:6, 66:19, 66:20, 66:22, 67:6, 67:21, 68:7
**due** [1] - 51:22
**Duffy** [30] - 24:18, 26:2, 26:5, 26:15, 26:23, 29:6, 38:17, 38:20, 38:21, 39:12, 46:11, 46:14, 47:9, 47:20, 55:8, 55:16, 55:17, 55:19, 56:3, 57:16, 58:7, 58:21, 64:12, 68:25, 70:15, 70:18, 70:25, 71:2, 71:13
**Duffy's** [1] - 56:8
**Duke** [2] - 8:18, 8:23
**duly** [2] - 4:5, 23:12
**during** [5] - 13:11, 26:1, 26:6, 35:15, 70:11

### E

**easier** [1] - 28:21
**effort** [1] - 69:10
**eight** [7] - 6:8, 9:14, 32:4, 54:12, 66:23, 69:17
**either** [8] - 10:21, 17:7, 19:2, 28:24, 61:5, 61:23, 64:1, 64:7
**employed** [2] - 70:6, 70:7
**employment** [1] - 5:7,

5:11, 66:15
**empty** [1] - 36:10
**end** [4] - 28:8, 60:18, 61:13, 69:23
**ended** [2] - 62:9, 69:19
**ending** [1] - 70:9
**enforcement** [2] - 27:17, 36:12, 37:10
**engage** [1] - 57:23
**engaged** [1] - 44:3
**ensure** [1] - 63:15
**entered** [1] - 67:23
**entire** [1] - 35:5
**entitled** [4] - 3:2, 11:3, 11:8, 12:11
**entry** [3] - 35:8, 36:16, 36:22
**essentially** [1] - 31:5
**establish** [2] - 45:2, 59:17
**established** [1] - 63:10
**evening** [3] - 38:24, 39:1, 46:5
**event** [2] - 31:12, 53:5
**events** [5] - 9:17, 12:19, 55:7, 70:15, 71:13
**eventually** [1] - 66:7
**evidence** [34] - 23:6, 33:25, 39:9, 41:11, 45:2, 45:11, 45:15, 48:7, 49:15, 51:18, 52:5, 53:15, 54:7, 57:8, 58:5, 58:8, 58:19, 59:7, 59:19, 60:3, 60:12, 61:10, 61:19, 61:23, 62:12, 62:21, 62:25, 64:11, 65:16, 65:17, 65:23, 66:3, 66:9, 66:10
**exact** [3] - 6:3, 9:19, 13:20
**exactly** [2] - 4:21, 56:11
**exam** [1] - 44:9
**EXAMINATION** [6] - 4:12, 18:2, 20:1, 23:15, 44:11, 48:15
**examination** [2] - 21:9, 61:3
**examine** [3] - 25:4, 25:6, 25:8
**examined** [2] - 4:5, 23:12
**except** [1] - 37:24
**exchanged** [1] - 38:17
**excused** [2] - 23:5, 49:14
**executed** [1] - 34:25
**executing** [1] - 35:16
**execution** [2] - 35:4, 36:3
**Exhibit** [38] - 33:1, 33:2, 33:3, 33:20, 33:23, 33:24, 38:12, 38:13, 38:15, 38:16, 39:4, 39:7, 39:8, 39:15, 39:20, 39:21, 39:22, 40:24, 41:6, 41:10, 41:12, 41:13, 42:1, 42:2, 42:11, 42:17, 49:24, 51:13, 51:16, 51:17, 55:22, 55:23, 56:6, 56:7, 56:13, 58:7, 70:21, 71:11
**exhibit** [2] - 38:23, 49:22

Case 1:16-mj-00039-JSS   Document 36-1   Filed 06/01/16   Page 23 of 30

to purchase a complete copy of the transcript.

**EXHIBITS** [1] - 2:10
  **exhibits** [2] - 51:22, 55:22
  **Exhibits** [7] - 38:11,
42:17, 51:23, 52:3, 53:24,
71:4, 71:9
  **experience** [2] - 23:24,
28:9
  **explain** [2] - 50:3, 50:7
  **Explosives** [1] - 23:21
  **extended** [1] - 28:1
  **extent** [1] - 54:22
  **extra** [1] - 28:1

**F**

  **Facebook** [20] - 2:12,
2:13, 2:14, 17:8, 17:9,
17:11, 17:16, 38:16, 39:22,
40:5, 41:14, 41:24, 43:1,
43:21, 47:8, 48:5, 55:22,
55:24, 58:17, 58:20
  **facing** [1] - 71:6
  **fact** [10] - 9:22, 21:12,
29:19, 31:3, 38:2, 49:2,
53:3, 54:5, 69:17, 70:13
  **factors** [1] - 65:6
  **facts** [1] - 53:10
  **failure** [1] - 64:3
  **fair** [9] - 11:19, 19:2,
19:11, 19:13, 23:22, 28:7,
42:11, 48:9, 55:18
  **false** [3] - 62:2, 62:7,
65:23
  **familiar** [1] - 24:3
  **family** [3] - 42:13, 63:8,
66:15
  **far** [6] - 5:23, 11:6, 44:13,
58:17, 58:25, 63:1
  **father** [7] - 5:2, 17:5,
39:23, 40:19, 48:6, 55:23,
68:5
  **favor** [1] - 71:17
  **February** [9] - 32:4, 32:10,
33:12, 33:13, 35:2, 38:18,
38:20, 39:25, 40:20
  **federal** [6] - 9:18, 9:21,
35:22, 50:15, 52:15, 54:16
  **felon** [1] - 18:11
  **few** [1] - 6:21
  **file** [2] - 52:13, 52:17
  **filed** [1] - 51:20, 51:22
  **filing** [1] - 71:22
  **filled** [2] - 62:4, 65:19
  **finally** [1] - 68:13
  **financial** [1] - 66:15
  **firearm** [61] - 13:8, 13:9,
13:11, 13:14, 13:19, 15:12,
21:22, 21:23, 26:17, 26:19,
26:21, 27:4, 27:24, 31:7,
31:8, 31:12, 31:19, 32:6,
32:9, 34:3, 34:9, 34:20,
34:21, 35:19, 36:6, 36:10,
36:13, 36:14, 36:25, 37:1,

37:3, 37:10, 37:13, 37:14,
37:16, 40:25, 41:1, 41:2,
44:14, 44:18, 45:3, 48:18,
50:14, 51:4, 51:7, 52:19,
53:7, 55:10, 55:12, 55:14,
56:19, 57:1, 57:11, 59:10,
59:22, 61:21, 61:22, 62:3,
64:23, 65:11
  **firearm-related** [1] - 64:23
  **Firearms** [2] - 23:21, 34:2
  **firearms** [68] - 9:18, 13:21,
15:2, 15:13, 24:9, 24:19,
24:20, 25:3, 25:4, 25:7,
25:10, 25:17, 25:19, 25:20,
25:22, 25:23, 27:2, 27:5,
27:20, 28:11, 28:12, 28:22,
29:10, 29:12, 29:13, 29:23,
30:3, 30:13, 30:14, 30:15,
30:18, 30:24, 31:3, 31:4,
31:17, 31:22, 32:4, 34:4,
36:7, 36:21, 37:19, 37:23,
38:3, 44:16, 45:16, 45:18,
45:19, 45:25, 49:2, 54:11,
54:12, 54:13, 57:13, 57:25,
59:24, 61:8, 61:12, 61:13,
61:24, 62:5, 62:7, 63:17,
65:12, 65:13, 65:24, 66:2
  **first** [20] - 4:17, 13:14,
18:8, 24:11, 31:11, 31:13,
36:22, 41:17, 42:10, 49:23,
51:24, 55:5, 58:2, 58:4,
59:10, 60:10, 60:15, 62:20,
64:21
  **five** [4] - 29:23, 32:14,
43:4, 67:8
  **Flexsteel** [1] - 18:21
  **flight** [1] - 63:2
  **FloorShow** [3] - 5:19,
6:14, 6:20
  **flustered** [2] - 59:1, 60:5
  **folks** [2] - 69:13, 69:23
  **follow** [1] - 29:5
  **followed** [1] - 31:10
  **following** [1] - 57:25
  **follows** [3] - 4:6, 23:13,
64:20
  **Fonville** [9] - 9:4, 9:6,
49:19, 50:9, 50:12, 50:13,
50:19, 52:8, 52:10
  **force** [1] - 12:22
  **Form** [8] - 34:2, 34:7,
34:12, 37:17, 37:19, 38:1,
48:22, 49:1
  **form** [1] - 34:8
  **forms** [1] - 45:2
  **forth** [4] - 12:15, 63:5,
65:6, 66:22
  **forty** [2] - 7:1, 9:13
  **forward** [2] - 46:8, 46:11
  **four** [4] - 29:24, 43:4,
69:4, 69:7
  **frame** [1] - 44:3
  **frankly** [5] - 57:24, 61:9,
69:25, 70:5, 71:16

  **free** [1] - 59:5
  **friend** [1] - 8:23
  **friends** [11] - 8:2, 8:5,
8:18, 8:20, 17:9, 17:10,
17:19, 21:20, 58:20, 59:20
  **front** [1] - 11:15
  **Fudd** [1] - 50:11

**G**

  **general** [3] - 12:3, 48:10,
59:7
  **generally** [6] - 14:16,
24:12, 26:12, 26:14, 50:17,
52:13
  **gift** [1] - 34:22
  **girlfriend** [7] - 30:9, 63:7,
64:8, 64:17, 66:25, 67:3
  **girlfriend's** [1] - 30:6
  **given** [2] - 45:15, 45:17
  **gonna** [1] - 6:18
  **Government** [18] - 3:5,
39:4, 39:20, 39:22, 41:5,
41:12, 41:13, 51:17, 53:24,
56:18, 58:21, 59:16, 60:5,
61:5, 61:9, 65:5, 70:14
  **Government's** [5] - 33:24,
39:8, 41:10, 52:7, 62:25
  **GOVERNMENT'S** [2] -
2:3, 2:11
  **graduated** [1] - 18:6
  **grams** [3] - 33:14, 33:15,
68:9
  **grand** [16] - 2:16, 17:3,
17:6, 38:21, 40:6, 40:7,
49:18, 51:20, 51:24, 54:16,
55:10, 56:9, 56:10, 56:12,
56:25, 70:16
  **grandmother's** [1] - 41:3
  **grant** [1] - 52:7
  **gray** [1] - 39:14
  **great** [1] - 61:3
  **grown** [1] - 54:19
  **guaranteed** [1] - 7:5
  **guess** [9] - 6:2, 13:2, 15:4,
16:13, 16:18, 19:16, 22:7,
66:7
  **guessing** [5] - 21:10,
21:11, 21:21, 22:18, 22:19
  **guilty** [5] - 50:13, 51:6,
52:14, 53:3, 53:5
  **Gun** [1] - 32:15
  **gun** [22] - 13:25, 14:1,
15:5, 15:9, 16:4, 16:6,
16:8, 16:10, 16:16, 22:2,
31:11, 31:24, 32:6, 32:12,
32:15, 36:10, 49:5, 59:12,
69:5, 69:7, 69:11, 71:15
  **guns** [23] - 15:7, 19:8,
29:19, 30:2, 44:22, 46:25,
65:18, 66:10, 68:17, 68:18,
68:19, 68:22, 68:23, 68:24,
69:12, 69:14, 69:17, 69:19,

69:22, 69:23, 70:9
  **guy** [2] - 8:18, 45:5
  **guys** [3] - 6:16, 69:19,
70:10

**H**

  **H-U-N-T** [1] - 23:18
  **halfway** [1] - 64:17
  **halting** [1] - 51:3
  **hand** [3] - 4:3, 23:10, 70:8
  **handed** [2] - 32:25, 38:10
  **handful** [1] - 8:4
  **handgun** [3] - 14:4, 27:21,
27:23
  **handguns** [2] - 28:24,
30:7
  **hands** [5] - 62:10, 69:13,
69:19, 69:23, 70:9
  **hang** [2] - 50:20, 51:8
  **hangs** [1] - 51:4
  **health** [2] - 67:14, 67:15
  **hear** [3] - 6:1, 10:19, 66:5
  **heard** [5] - 51:2, 53:20,
58:3, 62:17, 62:19
  **hearing** [8] - 3:4, 3:9,
3:15, 32:19, 60:13, 64:18,
72:5
  **Heather** [4] - 3:8, 24:18,
38:17, 39:17
  **helped** [1] - 20:15
  **helping** [1] - 18:15
  **hesitant** [2] - 63:13, 64:16
  **Hi** [2] - 30:19, 32:13
  **Hi-Point** [2] - 30:19, 32:13
  **high** [2] - 18:6, 28:3
  **higher** [1] - 62:23
  **himself** [5] - 34:20, 34:21,
43:22, 56:19, 62:8
  **hire** [1] - 11:4
  **hired** [1] - 7:6
  **history** [7] - 47:6, 54:2,
54:6, 63:23, 64:3, 66:13,
67:19
  **hold** [2] - 54:22, 55:1
  **home** [8] - 10:9, 10:10,
18:24, 21:15, 59:5, 63:18,
63:19, 64:7
  **Honor** [33] - 3:16, 3:17,
17:23, 18:1, 22:25, 23:2,
32:21, 33:19, 33:22, 38:5,
39:6, 41:8, 44:10, 49:11,
49:13, 49:17, 50:10, 52:2,
53:11, 53:13, 53:16, 53:22,
53:23, 54:12, 56:1, 56:6,
56:21, 58:4, 60:8, 61:7,
62:20, 72:2, 72:4
  **Hornady** [1] - 27:12
  **hour** [1] - 9:14
  **hours** [6] - 6:25, 9:12,
9:13, 9:14, 35:24
  **house** [4] - 14:18, 41:3,
64:16, 64:18

to purchase a complete copy of the transcript.

**Hunt** [5] - 2:5, 23:8, 23:18, 52:21, 65:20
**HUNT** [1] - 23:11
**hurt** [1] - 36:18

**I**

**idea** [1] - 9:3
**identified** [2] - 32:2, 61:7
**identify** [1] - 49:23
**illegal** [6] - 7:12, 48:17, 61:16, 63:18, 65:12, 65:13
**imagine** [1] - 70:22
**implicit** [1] - 71:14
**implied** [2] - 70:19, 71:12
**inches** [1] - 4:9
**incident** [6] - 11:21, 29:24, 32:7, 32:8, 47:22, 59:12
**incidentally** [1] - 71:3
**include** [3] - 58:13, 65:8
**including** [5] - 31:8, 57:3, 65:9, 66:13, 67:19
**income** [1] - 5:13
**incredibly** [1] - 60:7
**incriminate** [2] - 10:22, 12:7
**incriminating** [5] - 10:23, 10:24, 12:11, 12:16, 12:20
**indicate** [3] - 26:2, 30:5, 44:2
**indicated** [25] - 20:15, 21:9, 25:17, 25:24, 26:5, 27:13, 27:19, 29:16, 36:5, 36:14, 36:19, 36:21, 36:24, 37:2, 37:7, 37:8, 37:12, 37:20, 40:4, 40:11, 44:5, 45:17, 48:17, 50:22, 69:18
**indicates** [1] - 63:11
**indicating** [1] - 36:7
**indicating)** [3] - 14:3, 14:8
**indication** [3] - 44:2, 69:20, 70:10
**indications** [1] - 64:3
**indicator** [1] - 63:21
**indictment** [1] - 64:5
**individual** [1] - 24:3, 31:17, 31:19, 34:3, 34:8, 50:17, 51:5, 51:8, 54:1, 57:12, 57:15
**individuals** [8] - 26:13, 28:10, 28:11, 42:6, 42:7, 57:14, 57:16, 61:6
**inference** [1] - 55:18
**influence** [2] - 22:20, 71:6
**information** [7] - 31:7, 31:9, 42:19, 47:4, 54:8, 55:3, 66:16
**initial** [1] - 31:6
**initiate** [1] - 31:5
**initiated** [1] - 30:15
**inquired** [1] - 31:23
**inquiry** [1] - 29:18

**inside** [2] - 24:17, 24:21
**instances** [1] - 30:3
**instructed** [1] - 25:21
**instructions** [2] - 34:15, 34:17
**insufficient** [1] - 57:2
**intended** [1] - 62:8
**interfere** [2] - 22:21, 54:15
**interview** [1] - 25:14
**interviewed** [1] - 25:1
**interviewing** [1] - 36:1, 36:2
**introduce** [1] - 70:24
**introduced** [1] - 55:3
**investigation** [9] - 11:7, 11:17, 24:8, 24:11, 24:23, 30:16, 31:14, 70:14, 71:7
**investigator** [3] - 31:13, 31:16, 31:17
**Investigator** [7] - 24:7, 25:1, 30:17, 32:2, 33:4, 35:17, 36:11
**investigators** [1] - 36:19
**involve** [2] - 51:24, 65:11
**involved** [6] - 25:24, 45:12, 58:10, 68:4, 68:19, 69:13
**involvement** [2] - 35:3, 36:20
**involves** [2] - 65:10, 68:16
**Iowa** [6] - 4:20, 4:23, 24:16, 25:11, 25:13, 35:1
**ironically** [1] - 61:18
**irrelevant** [1] - 51:15
**issue** [7] - 50:25, 52:10, 58:2, 60:14, 60:21, 62:15, 62:18
**issues** [1] - 67:15
**item** [1] - 33:7

**J**

**Jackie** [4] - 3:20, 3:21, 30:9
**Jacqulyn** [2] - 2:4, 4:15
**JACQULYN** [2] - 4:4, 4:18
**job** [5] - 5:14, 5:16, 5:17, 5:22, 6:2, 6:13, 6:17, 67:12
**jobs** [3] - 18:14, 20:16, 67:8
**judge** [1] - 52:25
**Judge** [3] - 10:14, 53:4, 71:22
**judging** [1] - 66:6
**judicial** [5] - 50:11, 52:8, 52:9, 53:10, 53:18
**July** [1] - 29:24
**June** [5] - 28:18, 28:19, 32:3, 32:11, 32:14
**jury** [17] - 2:16, 17:3, 17:6, 38:21, 40:6, 40:7, 49:18, 51:20, 51:24, 54:16, 55:10, 56:9, 56:10, 56:12, 56:25, 56:9, 56:10, 56:12, 56:25

**66:7, 70:16**
**juvenile** [2] - 63:23, 67:22

**K**

**K-E-L-L-Y** [1] - 4:18
**keep** [6] - 16:8, 39:16, 39:17, 39:18, 56:8, 70:19
**Kelly** [18] - 2:4, 3:20, 3:21, 3:22, 4:15, 12:1, 13:3, 30:9, 35:9, 35:11, 35:13, 36:16, 36:25, 37:2, 59:1, 59:25, 61:9, 67:4
**KELLY** [3] - 3:23, 4:1, 4:4
**Kelly's** [1] - 37:4
**Kendan** [3] - 9:4, 9:6, 50:11
**kept** [1] - 16:10
**kind** [5] - 28:5, 42:25, 48:10, 57:18, 70:12
**knocking** [1] - 35:7
**knowing** [2] - 56:9, 57:19
**knowledge** [5] - 19:2, 33:5, 52:24, 54:25, 55:4
**known** [5] - 6:6, 13:12, 31:22, 47:5
**knows** [2] - 54:12, 55:18

**L**

**Landon** [15] - 3:3, 4:24, 24:4, 25:20, 25:21, 32:5, 32:8, 38:17, 39:23, 40:15, 40:16, 50:9, 70:17, 71:8
**Landon's** [1] - 40:19
**large** [1] - 28:1
**last** [10] - 4:17, 5:16, 8:13, 8:15, 14:24, 37:22, 66:23, 67:6, 67:7, 67:17
**law** [4] - 27:16, 36:12, 37:10, 51:10
**lawful** [3] - 5:7, 5:11, 28:14
**lawyer** [7] - 11:1, 11:2, 11:3, 11:4, 11:22, 11:23, 12:25
**least** [10] - 33:9, 44:20, 51:23, 63:3, 65:25, 66:1, 66:2, 67:7, 70:19, 71:12
**leave** [1] - 7:4
**left** [1] - 6:4
**legal** [1] - 10:17
**legally** [1] - 44:13
**legitimate** [1] - 70:22
**legitimately** [2] - 34:19, 34:21
**license** [4] - 20:25, 21:2, 21:7
**licensed** [1] - 34:4
**licenses** [1] - 36:9
**lied** [5] - 44:21, 57:21, 57:22, 69:16

**life** [1] - 63:3
**likely** [1] - 69:11
**limited** [4] - 19:3, 51:11, 54:6, 58:24
**Linda** [1] - 71:23
**line** [5] - 20:10, 31:11, 32:19, 33:3, 33:8
**live** [5] - 4:21, 5:5, 12:15, 18:22, 27:13
**lived** [2] - 18:7, 66:21
**living** [1] - 66:24
**loaded** [3] - 15:20, 27:21, 27:25
**located** [2] - 26:19, 36:10
**location** [2] - 26:7, 35:7
**locked** [1] - 17:18
**London** [1] - 15:17
**London's** [1] - 15:14
**look** [4] - 13:24, 49:24, 55:6, 67:12
**looking** [6] - 40:2, 41:23, 49:25, 58:7, 58:16, 59:9
**looks** [3] - 43:25, 68:1, 69:11
**lose** [3] - 5:22, 59:13, 60:12
**lost** [4] - 5:17, 6:2, 27:23, 27:24
**Love** [82] - 3:3, 4:24, 9:17, 13:7, 15:22, 18:5, 18:13, 19:6, 19:21, 21:12, 22:16, 23:22, 24:4, 24:9, 24:12, 25:21, 25:22, 28:15, 29:10, 29:13, 29:19, 29:22, 30:17, 30:23, 31:23, 32:5, 32:8, 32:12, 35:18, 35:21, 36:1, 36:2, 36:5, 36:13, 36:14, 36:21, 36:24, 37:2, 37:5, 37:15, 37:16, 38:17, 38:22, 39:23, 40:11, 40:14, 40:15, 40:16, 40:19, 41:15, 42:4, 42:9, 42:11, 42:22, 42:23, 43:11, 43:25, 44:13, 45:3, 45:9, 45:15, 45:17, 46:25, 47:2, 47:5, 48:7, 48:18, 49:18, 50:9, 50:16, 59:17, 61:8, 70:16, 70:17, 71:8, 71:21
**Love's** [3] - 37:2, 40:17, 48:6
**lunch** [1] - 9:14
**lying** [1] - 66:8

**M**

**ma'am** [5] - 6:6, 7:9, 8:6, 9:16, 22:20
**mad** [1] - 48:10
**magazine** [5] - 27:21, 27:25, 28:1, 28:2, 28:3
**magistrate** [1] - 52:25
**main** [2] - 8:12, 8:18
**majority** [1] - 14:18

www.PARKERrealtime.com
to purchase a complete copy of the transcript.

**man** [1] - 54:19
**manufactured** [2] - 25:11, 25:12
**manufacturer** [2] - 31:7, 31:9
**Maquoketa** [1] - 45:6
**March** [2] - 6:21
**marijuana** [37] - 7:10, 7:16, 7:18, 7:20, 7:23, 8:1, 8:7, 8:22, 14:14, 14:15, 15:22, 15:24, 21:12, 21:13, 27:8, 27:12, 29:15, 29:17, 33:15, 33:16, 37:6, 37:7, 44:1, 48:19, 48:23, 49:3, 49:7, 51:4, 55:11, 61:24, 61:25, 62:6, 65:18, 67:16, 68:9, 68:11, 69:15
**marked** [2] - 32:25, 38:10
**married** [1] - 67:2
**match** [2] - 26:14, 69:10
**matter** [4] - 3:1, 3:3, 17:3, 49:17
**Matter** [1] - 50:9
**mattress** [1] - 15:17
**mean** [22] - 6:2, 6:3, 6:15, 8:2, 8:4, 8:10, 8:23, 8:24, 13:20, 13:25, 14:18, 16:17, 17:14, 17:20, 19:15, 19:19, 22:15, 48:11, 56:4, 70:22, 70:25
**means** [1] - 22:11
**meant** [1] - 58:22
**media** [1] - 48:10
**medium** [1] - 43:1
**mental** [2] - 66:14, 67:15
**mention** [1] - 44:24
**mentioned** [1] - 60:3
**message** [1] - 70:23
**messages** [6] - 2:12, 35:14, 38:16, 47:8, 47:10, 70:18
**messed** [1] - 42:13
**met** [2] - 35:6, 50:18
**microphone** [2] - 4:8, 50:5
**Midwest** [1] - 63:3
**might** [8] - 17:20, 19:16, 22:21, 47:4, 47:5, 53:4, 63:13
**Milwaukee** [4] - 66:18, 66:20, 66:22, 70:5
**mind** [1] - 71:17
**minor** [2] - 35:10, 65:10
**misdemeanor** [1] - 29:3
**misdemeanors** [1] - 67:23
**misunderstood** [1] - 55:21
**mock** [1] - 70:23
**mock-up** [1] - 70:23
**mom** [1] - 16:5
**month** [1] - 43:22
**months** [8] - 5:16, 6:12, 6:21, 6:23, 14:24, 67:6, 68:2, 69:18
**most** [2] - 8:10, 45:14

**mostly** [1] - 7:19
**mother** [12] - 16:3, 17:2, 35:11, 35:13, 37:2, 37:11, 37:12, 42:4, 48:6, 55:24, 63:7
**mother's** [2] - 35:13, 37:14
**motion** [2] - 52:8, 71:22
**mouth** [5] - 39:16, 39:17, 39:18, 56:8, 70:19
**move** [1] - 33:20
**moved** [2] - 66:19
**moves** [2] - 39:3, 41:5
**MR** [38] - 3:16, 3:19, 4:13, 11:18, 16:22, 17:1, 17:22, 20:2, 22:24, 23:8, 23:16, 32:21, 32:24, 33:18, 38:5, 38:9, 39:3, 41:5, 44:7, 48:16, 49:9, 49:17, 50:2, 50:6, 51:1, 51:21, 52:6, 52:18, 53:1, 53:13, 53:22, 54:21, 54:24, 55:5, 56:1, 56:4, 60:22, 72:2
**MS** [3] - 3:17, 33:23, 4:1, 18:1, 18:3, 19:23, 23:2, 33:22, 39:6, 41:8, 44:10, 44:12, 48:13, 49:11, 49:25, 51:14, 52:2, 53:11, 53:16, 58:4, 60:2, 62:20, 72:4
**multiple** [1] - 20:6
**must** [2] - 55:5, 65:6

## N

**name** [12] - 4:14, 4:17, 8:13, 8:15, 10:2, 23:17, 39:16, 39:17, 39:18, 47:25, 58:13
**named** [1] - 24:3
**names** [5] - 7:25, 8:3, 8:9, 8:11, 60:5
**narcotic** [1] - 65:10
**Nathanson** [2] - 3:3, 24:4
**national** [1] - 30:21
**nature** [6] - 40:10, 42:25, 51:22, 56:15, 65:8, 68:14
**near** [1] - 27:11
**necessarily** [3] - 48:11, 59:4, 60:23
**need** [4] - 4:9, 28:23, 71:5, 71:25
**never** [3] - 7:6, 15:3, 67:2
**next** [3] - 11:12, 50:10, 67:12
**Nicholas** [1] - 23:25
**night** [6] - 10:5, 15:25, 44:23, 45:8, 45:12, 50:21
**nights** [1] - 46:22
**nine** [2] - 6:23, 9:14
**none** [1] - 47:7
**note** [5] - 51:14, 55:15, 61:4, 61:11, 63:24
**nothing** [1] - 61:4

**notice** [6] - 50:11, 52:8, 52:9, 52:16, 53:10, 53:19
**notices** [2] - 34:15, 34:17
**November** [1] - 44:5
**number** [5] - 31:9, 32:5, 55:13, 57:6, 69:19
**numbers** [4] - 25:22, 28:11, 30:23, 57:19
**numerous** [1] - 36:7

## O

**objection** [7] - 33:21, 39:5, 41:7, 51:13, 51:15, 52:1, 53:9
**obliterate** [2] - 25:21, 28:11, 57:19
**obtain** [6] - 28:15, 36:9, 42:16, 44:21, 48:18, 69:16
**obtained** [5] - 28:17, 29:12, 37:25, 45:18, 49:5
**obviously** [7] - 59:1, 59:3, 62:21, 64:2, 66:5, 68:11
**occupation** [1] - 23:19
**occur** [1] - 42:1
**occurred** [2] - 25:25, 42:2
**occurring** [1] - 29:21
**October** [2] - 29:25, 30:5
**offense** [2] - 65:9
**offer** [1] - 53:15
**OFFERED** [1] - 2:10
**offered** [5] - 2:14, 33:24, 39:8, 41:10, 51:17
**office** [1] - 54:8
**Officer** [27] - 24:10, 24:11, 25:14, 25:16, 26:8, 29:5, 29:8, 29:18, 30:12, 30:22, 31:1, 31:21, 32:11, 32:18, 35:25, 37:18, 39:10, 40:1, 40:6, 40:8, 41:17, 41:18, 41:20, 42:16, 52:21, 70:23
**officer** [2] - 58:13, 67:11
**officers** [3] - 24:15, 37:15, 46:19
**often** [1] - 7:18
**old** [4] - 6:9, 6:11, 66:21, 67:3
**on-line** [1] - 20:10
**once** [1] - 28:20
**one** [30] - 6:16, 12:6, 13:23, 16:13, 20:10, 25:18, 26:5, 27:20, 29:24, 32:6, 32:9, 33:9, 37:25, 40:3, 41:22, 42:8, 49:17, 49:19, 54:24, 55:5, 55:19, 56:5, 57:20, 60:1, 61:10, 67:3, 67:12, 68:18, 69:23
**one-year-old** [1] - 67:3
**ones** [2] - 20:14, 20:19
**opportunity** [1] - 12:25
**opposite** [1] - 54:18
**option** [1] - 12:24
**order** [2] - 4:9, 57:18,

64:13
**orders** [1] - 56:23
**original** [1] - 41:15
**originally** [2] - 37:12, 63:4
**otherwise** [2] - 34:20, 65:13
**outside** [2] - 25:11, 25:12
**over-the-counter** [1] - 34:5
**overwhelming** [1] - 57:11
**own** [3] - 26:23, 31:15, 44:13
**ownership** [1] - 24:20

## P

**p.m** [2] - 35:8, 72:6
**package** [2] - 33:14, 33:16
**page** [11] - 17:13, 17:17, 40:2, 42:10, 42:21, 42:23, 43:3, 43:6, 43:9, 50:8
**pages** [2] - 17:15, 58:23
**paper** [1] - 20:19
**paperwork** [1] - 65:19
**paraphernalia** [1] - 58:8
**parents** [7] - 54:17, 54:18, 54:23, 55:1, 55:17, 71:5, 71:9
**part** [1] - 15:11
**particular** [4] - 20:3, 54:14, 55:16, 57:3
**particularly** [1] - 54:13
**parties** [1] - 3:14
**parts** [1] - 58:2
**party** [1] - 34:22
**passenger** [1] - 26:23
**past** [1] - 67:19
**pat** [1] - 27:7
**pat-down** [1] - 27:7
**pause** [1] - 35:20
**paying** [2] - 21:3, 21:6
**pending** [5] - 3:13, 24:22, 62:16, 68:12, 71:19
**people** [10] - 7:25, 8:7, 8:10, 17:18, 28:10, 48:9, 50:20, 51:8, 55:19, 66:1
**perhaps** [3] - 21:10, 51:19, 68:18
**period** [4] - 29:22, 39:18, 62:9, 63:6
**permit** [14] - 28:16, 28:17, 28:20, 28:23, 28:24, 28:25, 29:1, 32:12, 36:9, 44:20, 49:5, 57:21, 57:22, 69:16
**permits** [1] - 57:21
**person** [15] - 34:9, 34:12, 34:18, 34:19, 37:8, 48:19, 52:19, 57:10, 57:23, 59:10, 59:18, 61:22, 66:11, 68:10, 68:15
**personal** [1] - 23:24
**personally** [1] - 33:7
**persons** [2] - 7:22, 65:14

Visit www.aptusCR.com
to purchase a complete copy of the transcript.

**Pete** [28] - 8:16, 24:18, 25:18, 25:19, 25:20, 25:21, 25:24, 26:2, 26:22, 27:1, 27:11, 27:16, 29:12, 29:15, 32:9, 45:18, 45:19, 47:1, 59:25, 60:1, 61:8, 61:14, 61:24, 66:2, 66:3, 69:2, 69:3, 69:4
**phone** [5] - 10:7, 35:14, 47:14, 55:13, 56:8
**photograph** [1] - 70:24
**photos** [1] - 47:12
**physical** [2] - 66:14, 67:14
**physically** [1] - 28:5
**pick** [1] - 50:5
**picture** [2] - 47:14, 58:12
**piece** [1] - 20:19
**pistol** [2] - 14:4, 28:8
**place** [2] - 39:1, 63:15
**placed** [1] - 63:24
**places** [1] - 31:22
**Plaza** [2] - 7:3, 7:4
**plea** [1] - 53:3
**plead** [2] - 52:14, 53:5
**pled** [2] - 50:13, 51:6
**pocket** [1] - 27:9
**point** [10] - 11:6, 26:5, 30:12, 35:21, 35:25, 42:8, 50:19, 59:19, 69:25, 70:11
**Point** [2] - 30:19, 32:13
**pointed** [1] - 62:24
**Police** [1] - 24:8
**police** [7] - 10:2, 10:3, 24:25, 45:14, 59:15, 69:1, 69:6
**portions** [1] - 39:15
**posed** [1] - 68:15
**position** [3] - 7:5, 7:6, 54:19
**positions** [2] - 18:18, 18:20
**possess** [1] - 59:21
**possessing** [1] - 44:15
**possession** [10] - 44:18, 50:14, 51:6, 51:7, 52:19, 53:6, 57:10, 61:20, 68:10, 69:4
**possible** [2] - 48:12, 69:11
**post** [6] - 2:13, 2:14, 39:22, 41:14, 41:15, 43:8
**posted** [2] - 41:16, 43:22
**posting** [2] - 55:23, 55:24
**postings** [2] - 56:14, 58:18
**posts** [4] - 17:16, 40:5, 42:1, 43:7
**potentially** [1] - 36:18
**preliminary** [1] - 3:4
**prepare** [1] - 32:18
**prepared** [2] - 3:14, 33:3
**present** [9] - 11:18, 26:1, 26:6, 35:5, 35:9, 45:9, 46:17, 46:23, 70:10
**presented** [1] - 58:6

**pressed** [1] - 60:4
**Pretrial** [7] - 53:17, 53:19, 63:4, 63:10, 63:16, 63:22, 66:17
**pretrial** [2] - 54:3, 67:11
**pretty** [3] - 50:21, 51:15, 67:11
**previously** [3] - 30:10, 35:17, 68:24
**primarily** [1] - 54:5
**printing** [1] - 43:1
**prison** [3] - 50:15, 52:15, 53:8
**privilege** [1] - 16:23
**privileges** [1] - 28:21
**probable** [3] - 3:10, 52:11, 57:5, 58:2, 59:9, 60:16, 60:21, 60:23, 61:1, 62:13, 62:14, 62:22
**probation** [5] - 54:8, 63:24, 64:1, 67:24, 68:2
**probative** [4] - 51:12, 58:15, 58:24, 60:7
**problems** [2] - 60:9, 60:10, 62:24
**proceed** [3] - 3:14, 13:2
**Proceedings** [1] - 72:6
**proceedings** [5] - 2:16, 3:13, 62:17, 67:20, 71:19
**process** [3] - 5:9, 26:21, 64:21
**proffer** [1] - 53:16
**prohibited** [11] - 44:15, 48:19, 52:19, 57:10, 57:23, 59:10, 59:18, 61:22, 63:18, 65:14, 66:11
**prohibiting** [1] - 64:13
**proof** [1] - 65:5
**proposition** [1] - 12:3
**prosecutor** [1] - 19:10
**protect** [2] - 56:22, 57:3
**protrude** [1] - 28:7
**provided** [7] - 29:11, 47:17, 58:12, 59:24, 59:25, 66:2, 66:10
**provides** [2] - 31:9, 54:7
**providing** [3] - 59:10, 61:22, 65:13
**public** [9] - 17:18, 26:9, 42:18, 56:5, 56:14, 56:15, 56:22, 57:3, 58:20
**puffery** [1] - 48:10
**pull** [1] - 4:8
**pulled** [1] - 58:7
**purchase** [14] - 13:8, 13:9, 25:18, 28:16, 28:18, 28:21, 28:23, 29:1, 49:1, 62:4, 65:12, 65:24, 69:17
**purchased** [16] - 15:2, 15:4, 24:9, 25:20, 30:13, 30:18, 30:24, 31:3, 32:5, 37:21, 41:1, 45:3, 54:11, 65:18, 68:25, 69:5
**purchaser** [3] - 31:11,

31:13, 38:2
**purchases** [4] - 34:3, 36:8, 37:24, 57:1
**purchasing** [8] - 26:22, 31:17, 34:9, 34:19, 34:21, 57:13, 57:20, 57:24
**purport** [1] - 39:24
**purpose** [1] - 3:9
**purposes** [2] - 60:13, 62:13
**put** [1] - 30:22
**putting** [1] - 56:16

**Q**

**questions** [13] - 10:22, 12:14, 12:21, 13:3, 17:22, 17:25, 19:14, 19:23, 22:24, 40:12, 44:8, 48:13, 49:9
**quick** [11] - 17:24, 23:1, 49:10, 49:24, 51:12, 53:9, 53:14, 58:3, 62:19, 70:3, 72:3
**Quick** [1] - 3:8
**QUICK** [21] - 3:17, 18:1, 18:3, 19:23, 23:2, 33:22, 39:6, 41:8, 44:10, 44:12, 48:13, 49:11, 49:25, 51:14, 52:2, 53:11, 53:16, 58:4, 60:2, 62:20, 72:4
**quickly** [2] - 50:1, 52:22
**quit** [1] - 7:7
**quite** [2] - 6:21, 57:11
**quote** [1] - 42:12

**R**

**raise** [2] - 4:3, 23:10
**Rapids** [1] - 50:18
**re** [1] - 31:6
**reach** [2] - 15:14, 31:18
**reached** [1] - 24:24
**reaction** [1] - 54:18
**read** [4] - 34:14, 39:14, 42:13, 43:10
**Reade** [2] - 53:4, 71:23
**reading** [2] - 23:25, 50:1
**real** [2] - 43:12, 43:14
**really** [5] - 52:12, 58:14, 63:23, 64:11, 70:13
**reason** [3] - 59:17, 59:20, 71:1
**reasonably** [1] - 65:3
**reasoning** [1] - 6:3
**reasons** [1] - 61:2
**receipt** [1] - 51:13
**RECEIVED** [1] - 2:10
**received** [16] - 2:14, 10:7, 33:23, 33:25, 39:7, 39:9, 41:9, 41:11, 51:16, 51:18, 51:24
**recognize** [2] - 38:13,

41:13
**recommendation** [1] - 54:9
**recommended** [1] - 54:3
**record** [10] - 4:16, 32:24, 34:6, 38:9, 39:15, 43:10, 52:6, 60:15, 61:4, 67:20
**records** [2] - 31:19, 62:4
**recovered** [6] - 25:3, 30:18, 31:4, 32:7, 32:10, 69:9
**recovery** [1] - 30:14
**RECROSS** [1] - 2:2
**REDIRECT** [3] - 2:2, 20:1, 48:15
**referred** [2] - 34:6, 60:17
**reflect** [2] - 32:24, 38:9
**regard** [1] - 65:5
**regarding** [5] - 11:2, 31:8, 31:10, 31:19, 38:22
**Reginald** [2] - 24:18, 24:19
**registered** [1] - 26:15
**regular** [2] - 29:15, 29:16
**regularly** [1] - 70:6
**related** [1] - 64:23
**relation** [1] - 29:9
**relationship** [7] - 5:3, 6:4, 6:18, 18:4, 19:20, 40:17, 40:21
**relatively** [1] - 62:9
**release** [4] - 54:4, 64:7, 64:16, 68:16
**released** [5] - 18:25, 64:20, 67:2, 70:2, 70:4
**releasing** [1] - 64:17
**reliable** [1] - 60:13
**removed** [1] - 37:1
**repeat** [1] - 62:23
**repeatedly** [1] - 60:4
**Report** [7] - 53:17, 53:19, 63:4, 63:11, 63:16, 63:22, 66:17
**report** [3] - 25:23, 30:1, 30:5
**reported** [6] - 27:23, 27:24, 29:19, 29:23, 54:6, 57:17
**reports** [1] - 23:25
**representation** [2] - 11:24, 27:16
**represented** [2] - 3:5, 3:7
**request** [2] - 25:2, 37:4
**require** [3] - 34:8, 34:12, 48:22
**required** [10] - 10:21, 10:25, 12:6, 34:5, 49:6, 65:4, 65:15, 66:12, 67:18, 68:13
**research** [1] - 30:12
**residence** [7] - 4:19, 18:7, 34:25, 35:8, 35:9, 37:15, 67:1
**residue** [1] - 27:12

to purchase a complete copy of the transcript.

**resold** [1] - 31:13
**resources** [1] - 66:15
**respect** [6] - 23:22, 26:17, 38:20, 40:25, 57:5, 62:3
**respectfully** [2] - 56:21, 57:1
**responses** [1] - 55:25
**responsible** [3] - 54:23, 55:2, 71:8
**retail** [3] - 31:11, 31:13, 34:4
**retrieve** [1] - 37:10
**retrieved** [1] - 37:16
**return** [1] - 67:1
**returned** [2] - 66:20, 68:7
**review** [2] - 52:13, 71:22
**rid** [2] - 16:4, 16:6
**risk** [1] - 63:2
**romantic** [2] - 5:3, 18:4
**round** [3] - 27:21, 27:25
**rounds** [1] - 27:13
**Ruger** [3] - 27:20, 44:24, 45:4
**rule** [1] - 52:10

## S

**safety** [1] - 65:4
**sale** [4] - 61:15, 61:16, 62:3, 65:13
**sales** [1] - 31:19
**save** [1] - 52:21
**scale** [2] - 27:12, 71:16
**scales** [1] - 58:9
**scary** [1] - 71:16
**scene** [1] - 69:9
**Schlosser** [32] - 24:1, 24:7, 24:11, 25:1, 25:16, 26:8, 29:5, 29:8, 29:18, 30:12, 30:17, 30:22, 31:1, 31:21, 32:2, 32:11, 32:18, 33:4, 35:17, 35:25, 36:11, 37:18, 37:22, 39:10, 40:1, 40:8, 41:18, 41:20, 42:16, 47:11, 47:12, 70:23
**Schlosser's** [3] - 24:10, 25:14, 39:12
**school** [1] - 18:6
**scooch** [1] - 4:7
**scope** [1] - 11:24
**screen** [3] - 47:9, 47:25, 58:11
**seal** [3] - 51:20, 51:22, 52:4
**search** [2] - 27:7, 32:10, 34:24, 35:4, 35:6, 35:10, 35:15, 35:16, 36:3, 36:6, 42:18, 46:22
**searched** [2] - 46:19, 58:22
**seat** [9] - 4:7, 21:6, 23:14, 26:18, 26:20, 26:23, 27:3, 27:5, 27:18

**second** [3] - 60:10, 62:2, 65:1
**Section** [2] - 64:25, 65:7
**see** [5] - 13:14, 15:13, 17:17, 17:19, 65:19
**seek** [1] - 58:23
**seem** [4] - 59:2, 60:6, 62:6, 65:22
**sell** [3] - 7:9, 7:12, 31:22
**selling** [1] - 57:24
**send** [1] - 35:14
**sends** [1] - 70:18
**sent** [1] - 38:16
**sentenced** [4] - 50:14, 52:14, 52:20, 53:7
**separate** [3] - 29:24, 46:22, 60:19
**September** [1] - 69:6
**sequence** [1] - 71:12
**serial** [5] - 25:22, 28:11, 30:22, 31:8, 57:19
**series** [1] - 26:8
**serious** [1] - 59:12
**seriously** [1] - 56:24
**seriousness** [1] - 68:14
**Services** [7] - 53:17, 53:19, 63:4, 63:11, 63:16, 63:22, 66:17
**services** [2] - 54:3, 67:11
**set** [1] - 65:6
**several** [1] - 27:8
**Shaw** [35] - 24:18, 24:20, 24:22, 24:24, 25:1, 25:15, 25:17, 25:18, 25:25, 26:2, 26:17, 26:20, 27:7, 29:2, 29:11, 29:15, 32:9, 45:5, 45:14, 45:18, 45:22, 46:11, 46:12, 47:1, 47:2, 57:16, 59:11, 59:17, 59:24, 60:11, 61:14, 68:22, 68:25
**shaw's** [1] - 47:5
**Shaw's** [3] - 25:2, 29:9, 47:6
**shelf** [3] - 16:9, 16:12, 16:13
**shells** [1] - 69:8
**shit** [3] - 39:18, 43:12, 43:13
**shoes** [1] - 27:17
**shooting** [19] - 24:14, 25:24, 26:1, 26:6, 44:23, 45:8, 45:12, 46:17, 46:21, 47:22, 57:25, 58:10, 68:19, 68:21, 69:1, 69:3, 69:13, 69:21, 70:11
**shop** [2] - 31:11, 32:6
**short** [1] - 62:9
**shortly** [2] - 24:14, 46:11
**shot** [4] - 47:9, 47:25, 58:11, 59:13
**show** [3] - 11:12, 26:12, 49:21
**showed** [1] - 47:11
**shown** [1] - 31:23, 43:8

**shows** [1] - 51:1
**shut** [2] - 56:8, 70:19
**side** [1] - 10:21
**significance** [4] - 27:2, 50:3, 50:7, 50:24
**significant** [4] - 38:19, 63:6, 63:9, 63:19
**similar** [1] - 29:11
**simple** [1] - 67:22
**simply** [2] - 52:18, 61:1
**situation** [1] - 55:14
**six** [2] - 6:8, 69:18
**sixteen** [1] - 6:12
**size** [1] - 14:7
**SM** [2] - 43:12, 43:15
**small** [1] - 27:8
**smaller** [1] - 14:7
**smoke** [1] - 21:19
**smokes** [3] - 61:24, 61:25, 69:15
**smoking** [3] - 43:25, 60:1, 61:11
**smooth** [1] - 50:21
**social** [1] - 48:9
**sold** [7] - 15:9, 30:13, 31:10, 32:6, 32:15, 61:8, 61:23
**someone** [1] - 56:11
**sometimes** [1] - 48:9
**somewhat** [1] - 51:2
**son** [1] - 54:19
**soon** [1] - 46:3
**sorry** [7] - 5:24, 9:13, 24:13, 32:3, 32:8, 42:17, 47:22
**sort** [5] - 10:25, 28:23, 60:17, 66:22, 69:25
**sounded** [1] - 60:4
**sounds** [1] - 16:24
**source** [2] - 28:12, 58:15
**spaced** [1] - 42:25
**Special** [1] - 65:20
**special** [1] - 23:20
**specific** [3] - 31:8, 31:15, 33:10
**specifically** [7] - 26:4, 30:19, 36:20, 46:7, 56:2, 58:5, 58:23
**specify** [1] - 5:12
**speculate** [1] - 22:10
**speculating** [9] - 19:11, 19:13, 19:15, 21:10, 21:11, 21:21, 22:5, 22:8, 22:9
**speculation** [1] - 59:22
**spell** [1] - 4:16
**spent** [1] - 69:8
**stage** [1] - 60:25
**stamp** [1] - 58:14
**stands** [2] - 43:15, 43:17
**state** [8] - 4:14, 8:11, 11:23, 25:11, 25:13, 34:9, 34:18
**statement** [4] - 29:14,

56:25, 62:3, 62:7
**statements** [4] - 37:6, 57:15, 61:2, 65:23
**States** [8] - 3:2, 3:6, 3:19, 33:20, 39:3, 44:7, 57:7, 64:25
**states** [1] - 63:4
**statuses** [2] - 48:5, 58:19
**step** [6] - 23:3, 23:9, 49:12, 64:21, 65:1
**still** [1] - 68:11
**stolen** [7] - 25:23, 29:20, 29:23, 30:2, 30:3, 30:7, 57:18
**stop** [2] - 24:17, 68:8
**stopped** [2] - 68:8, 68:22
**store** [3] - 15:12, 15:22, 32:15
**stores** [1] - 15:15
**story** [5] - 26:10, 29:9, 29:11, 55:6, 57:17
**strangely** [1] - 42:25
**street** [2] - 26:13, 43:13
**streets** [1] - 56:16
**strength** [1] - 58:6
**stretch** [1] - 69:18
**strip** [1] - 50:18
**strong** [5] - 57:11, 62:12, 64:11, 65:16, 65:22
**strongly** [1] - 36:14
**stuff** [1] - 11:2
**stupid** [1] - 71:8
**subject** [1] - 11:19
**subsequent** [1] - 41:14
**substance** [4] - 50:22, 61:20, 65:22, 66:4
**substances** [5] - 7:12, 22:21, 24:21, 49:7, 63:19
**substantial** [2] - 53:7, 66:9
**successful** [1] - 64:1
**successfully** [1] - 67:24
**suggested** [2] - 63:16, 64:9
**suggests** [1] - 55:4
**supervision** [1] - 64:4
**support** [1] - 62:14
**supposed** [2] - 4:1, 10:17
**surprised** [1] - 59:2
**surprising** [1] - 11:12
**suspect** [1] - 12:16
**suspected** [1] - 27:6
**suspended** [1] - 21:2
**suspension** [1] - 68:9
**sworn** [2] - 4:5, 23:12

## T

**talks** [2] - 8:10, 9:3
**Tanya** [3] - 37:2, 41:15, 42:4
**target** [2] - 11:7, 11:16
**Taurus** [1] - 30:20

to purchase a complete copy of the transcript.

**term** [3] - 22:17, 52:15, 53:8

**termi** [1] - 6:3

**terminated** [1] - 6:13

**testified** [8] - 4:6, 8:6, 23:13, 30:10, 38:21, 56:9, 59:25, 66:25

**testifies** [2] - 50:16, 71:13

**testify** [12] - 12:4, 12:7, 17:3, 17:6, 52:22, 55:9, 59:2, 66:1, 70:16

**testifying** [2] - 56:10, 56:12

**testimony** [15] - 40:7, 40:13, 48:20, 50:19, 51:2, 51:20, 54:16, 55:15, 57:14, 57:15, 58:25, 61:7, 61:12, 63:12, 68:20

**Testimony** [1] - 50:9

**text** [3] - 35:14, 70:18, 70:23

**THE** [91] - 3:1, 3:18, 3:21, 3:24, 4:3, 4:7, 4:11, 5:24, 5:25, 6:1, 10:14, 10:16, 10:17, 10:20, 11:1, 11:3, 11:5, 11:6, 11:9, 11:11, 11:14, 11:15, 11:25, 12:1, 12:5, 12:6, 12:8, 12:9, 12:13, 12:14, 12:17, 12:18, 12:23, 12:24, 13:1, 13:2, 13:6, 16:20, 16:24, 17:24, 19:24, 23:1, 23:3, 23:4, 23:6, 23:9, 23:14, 32:22, 32:23, 33:21, 33:23, 38:6, 38:7, 39:5, 39:7, 40:14, 40:16, 41:7, 41:9, 44:9, 48:14, 49:10, 49:12, 49:13, 49:15, 49:23, 50:4, 50:24, 51:11, 51:16, 51:19, 52:1, 52:3, 52:9, 52:23, 53:2, 53:12, 53:14, 53:18, 54:20, 54:22, 55:3, 55:21, 56:2, 58:1, 59:23, 60:15, 61:18, 64:19, 72:3, 72:5

**Theisen's** [3] - 32:13, 37:24, 37:25

**themselves** [2] - 12:7

**thereafter** [1] - 24:15

**third** [2] - 27:4, 34:22

**threat** [4] - 70:20, 71:11, 71:12, 71:14

**threatened** [2] - 17:2, 17:5

**threatening** [1] - 40:5

**threats** [5] - 42:12, 51:25, 54:23, 55:20, 56:15

**three** [7] - 18:19, 24:19, 24:20, 27:13, 51:24, 63:6, 68:23

**tickets** [1] - 21:6

**ties** [6] - 63:9, 63:19, 66:15, 66:16, 70:4, 70:5

**Tim** [2] - 3:6, 23:8

**Timeline** [1] - 2:15

**TIMOTHY** [1] - 23:11

**Timothy** [2] - 2:5, 23:18

**tipped** [1] - 71:16

**Title** [1] - 64:24

**Tobacco** [2] - 23:21, 34:1

**today** [14] - 3:9, 15:5, 18:25, 51:22, 54:7, 55:4, 57:8, 58:6, 58:25, 59:2, 59:25, 61:10, 63:12, 67:1

**together** [2] - 69:2, 71:5

**took** [4] - 16:16, 39:1, 47:12, 53:3

**top** [2] - 16:9, 16:12

**total** [1] - 29:23

**toward** [1] - 4:8

**towards** [1] - 56:25

**trace** [1] - 31:5

**traces** [2] - 30:15, 30:16

**traffic** [1] - 24:17, 68:8

**trafficking** [1] - 58:9

**training** [2] - 28:9, 36:8

**transaction** [2] - 28:13, 34:6

**transcribed** [1] - 50:8

**Transcript** [1] - 2:16

**transcript** [2] - 49:18, 50:16

**transferee** [1] - 34:18

**transit** [1] - 49:20

**traveled** [1] - 35:6

**traveling** [1] - 26:13

**tried** [1] - 31:23

**truck** [1] - 21:1

**true** [3] - 33:5, 34:13, 56:1

**truth** [2] - 22:22, 66:8

**truthfully** [1] - 55:9

**try** [1] - 36:13

**trying** [5] - 20:17, 52:21, 58:23, 64:12, 71:6

**Tuesday** [3] - 10:5, 15:25, 48:2

**turn** [5] - 38:8, 41:12, 42:10, 42:21, 60:14

**turning** [4] - 44:23, 45:8, 47:8, 60:9

**twice** [1] - 56:17

**two** [31] - 4:9, 5:16, 8:12, 8:18, 14:6, 14:24, 18:18, 18:20, 20:18, 26:13, 27:2, 27:5, 30:18, 32:7, 32:12, 35:24, 36:10, 40:22, 41:9, 43:7, 46:22, 58:2, 60:19, 62:14, 63:23, 64:21, 64:23, 66:1, 66:5, 67:7, 68:24

**two-step** [1] - 64:21

**types** [2] - 20:18, 51:8

**typically** [1] - 52:10

**typo** [4] - 33:10, 33:11, 43:18, 43:19

**U**

**U.S.C** [1] - 57:10

**ultimately** [1] - 50:13

**unable** [1] - 59:21

**uncertain** [2] - 12:10, 12:20

**undecided** [2] - 70:1, 70:12

**under** [8] - 15:14, 15:15, 22:20, 51:20, 51:22, 52:4, 64:24, 68:9

**underlying** [1] - 38:24

**underneath** [3] - 26:18, 26:19, 28:7

**understood** [1] - 34:14

**unemployed** [1] - 67:5

**unemployment** [1] - 5:8

**unfolds** [1] - 55:6

**United** [8] - 3:2, 3:6, 3:19, 33:20, 39:3, 44:7, 57:7, 64:25

**unknown** [2] - 19:3, 68:6

**unlawful** [9] - 53:6, 57:24, 61:20, 62:6, 65:17, 65:21, 66:4, 68:16, 68:17

**Unlimited** [3] - 18:17, 20:20, 20:23

**unlocked** [1] - 30:6

**up** [17] - 3:24, 4:8, 11:12, 11:15, 23:10, 29:5, 31:23, 50:5, 50:18, 60:5, 61:14, 62:9, 69:10, 69:19, 69:23, 70:9, 70:23

**user** [18] - 37:6, 37:9, 44:17, 48:19, 48:23, 49:3, 49:6, 50:14, 51:6, 51:7, 53:6, 54:10, 55:11, 61:20, 62:6, 65:17, 65:21, 66:4

**users** [2] - 29:15, 29:16, 44:15, 51:5

**uses** [4] - 8:22, 14:15, 21:13, 21:15

**V**

**valid** [2] - 29:1, 44:20

**value** [5] - 51:12, 58:15, 58:24, 60:6, 60:7

**various** [2] - 31:21, 55:24

**VAVRICEK** [38] - 3:16, 3:19, 4:13, 11:18, 16:22, 17:1, 17:22, 20:2, 22:24, 23:8, 23:16, 32:21, 32:24, 33:18, 38:5, 38:9, 39:3, 41:5, 44:7, 48:16, 49:9, 49:17, 50:2, 50:6, 51:1, 51:21, 52:6, 52:18, 53:1, 53:13, 53:22, 54:21, 54:24, 55:5, 56:1, 56:4, 60:22, 72:2

**Vavricek** [12] - 3:6, 3:18, 11:16, 19:24, 23:7, 48:14, 49:16, 52:5, 53:12, 53:20, 60:17, 72:1

**Vavricek's** [1] - 62:17

**vehicle** [12] - 24:17, 24:19,

24:22, 26:7, 26:24, 30:4, 30:6, 30:19, 46:19, 46:22, 68:21

**Vendors** [3] - 18:17, 20:20, 20:23

**verified** [1] - 33:7

**versus** [2] - 3:2, 14:10

**victim** [1] - 65:11

**victims** [1] - 64:10

**video** [4] - 26:12, 43:21, 43:24, 44:5

**videotape** [1] - 61:15

**videotaped** [1] - 44:4

**videotapes** [1] - 26:9

**view** [1] - 43:21

**violence** [1] - 65:10

**visit** [1] - 17:13

**voicemail** [2] - 6:4, 6:17

**voluntarily** [1] - 7:7

**W**

**waistband** [5] - 14:9, 14:11, 21:22, 21:23, 22:2

**Walgreens** [1] - 20:11

**walks** [1] - 58:11

**Wanda** [2] - 37:15, 37:16

**wants** [2] - 59:14, 60:24

**warrant** [9] - 32:10, 34:24, 35:4, 35:6, 35:10, 35:16, 35:22, 36:3, 42:18

**Watson** [1] - 8:18

**weak** [4] - 60:3, 60:7, 60:24, 62:12

**weakest** [1] - 59:18

**wealth** [1] - 54:7

**weapons** [5] - 28:16, 28:17, 28:18, 36:17, 58:9

**wearing** [1] - 15:16

**week** [11] - 6:25, 9:13, 9:17, 9:18, 49:21, 55:7, 55:8, 56:19, 57:9, 67:17, 68:8

**weekdays** [2] - 14:20, 14:21

**weekend** [1] - 14:17

**weekends** [6] - 7:19, 14:20, 14:22, 21:12, 21:13, 67:16

**weekly** [1] - 69:15

**weight** [8] - 33:14, 33:16, 59:8, 62:21, 65:15, 71:4

**Wesley** [1] - 8:14

**west** [1] - 24:16

**whichever** [1] - 20:10

**whole** [1] - 55:6

**Will's** [1] - 8:13

**willing** [1] - 69:24

**wind** [2] - 70:16, 70:17

**wish** [3] - 53:20, 58:3, 62:19

**Witness** [2] - 23:5, 49:14

**witness** [16] - 3:25, 4:2,

Visit www.example.com
to purchase a complete copy of the transcript.

4:5, 10:18, 10:20, 11:16,
12:3, 17:25, 23:12, 32:25,
38:10, 40:7, 41:22, 54:16,
56:25, 71:7

**WITNESS** [22] - 2:2, 4:11,
5:25, 10:14, 10:17, 11:1,
11:5, 11:9, 11:14, 11:25,
12:5, 12:8, 12:13, 12:17,
12:23, 13:1, 13:6, 23:4,
32:23, 38:7, 40:16, 49:13

**witnesses** [11] - 17:2,
17:6, 40:4, 51:24, 55:16,
56:20, 57:2, 57:4, 60:11,
64:10, 66:5

**woman** [1] - 42:12
**women** [2] - 9:2, 9:3
**wonderful** [1] - 61:9
**word** [6] - 22:8, 22:10,
22:13, 22:14, 56:16
**words** [1] - 57:1
**works** [1] - 11:10
**written** [1] - 20:19

# Y

**year** [1] - 67:3
**years** [6] - 6:8, 50:15,
63:6, 66:21, 66:23, 67:7
**yesterday** [3] - 41:16,
42:3, 43:11
**yo** [3] - 39:16, 39:17,
39:18
**yourself** [1] - 10:22

Contact ARB at 319-362-1850 or www.ctrealtime.com
to purchase a complete copy of the transcript.